595 A.2d 1247

John MOHLER and Anna J. Mohler, his Wife, Appellants,

v.

William F. JEKE and Mary C. Jeke and Mary Kearney,
t/a J & K Personal Care Home and Jeke, Inc.

v.

**WESTERN PENNSYLVANIA HOSPITAL.**

Superior Court of Pennsylvania.

Argued April 24, 1991.

Filed Aug. 7, 1991.

480

Marc Rosenwasser, Pittsburgh, for appellants.

Bernard J. Sweer, Pittsburgh, for Jeke & Kearney, appellees.

Before ROWLEY, President Judge, and CAVANAUGH and HESTER, JJ.

CAVANAUGH, Judge.

This is an appeal from the entry of a compulsory nonsuit against the plaintiff in favor of defendant J & K Personal Care Home. For the reasons stated hereinafter, we affirm the order of the lower court denying appellants' motion to remove the nonsuit.

The facts are as follows. One of the plaintiffs in this case, John Mohler[1], was a seventy-six year old male suffering from declining health. He became a resident at the J & K Personal Care Home in February of 1985. On several occasions as a result of medical conditions, Mr. Mohler was brought to the hospital to be examined. On each occasion he was examined by the hospital, and his return to J & K was approved. Mr. Mohler's personal physician ratified these decisions. The last such occasion was on April 18, 1986. Mr. Mohler was taken to West Penn Hospital, examined, and returned to J & K around 8:00 p.m. Mr. Mohler was put to bed. About 3:00 a.m. on April 19, Mr. Mohler awoke, and while in an incoherent state pushed his way past

1. Plaintiff has since died of causes unrelated to this case.

an attendant and ran into the street. He fell while outside and injured himself. This suit against the personal care home ensued.

The case went to trial in May of 1990. After presentation of the plaintiffs' case, the lower court judge granted the defendant's motion for the entry of a non-suit and denied the motion to take off the non-suit. This appeal followed.

We begin our analysis by noting the proper standard for a trial court's entry of a compulsory non-suit, as stated in *Reimer v. Tien*, 356 Pa.Super. 192, 196–7, 514 A.2d 566, 568 (1986).

"A judgment of non-suit can be entered only in clear cases and plaintiff must be given the benefit of all evidence favorable to him together with all reasonable inferences of facts arising therefrom, and any conflict with the evidence must be resolved in his favor." *Engle v. Spino*, 425 Pa. 254, 256, 228 A.2d 745, 746 (1961 [1967]). When a compulsory non-suit is entered, "lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement" *McAuliffe v. Constantine*, 228 Pa.Super. 52, 54, 323 A.2d 158, 159 (1974). "When an issue of credibility is raised on motion for compulsory non-suit, it is not within the province of the trial judge to determine the believability of the plaintiff's testimony." *Scott v. Purcell*, 490 Pa. 109, 113, 415 A.2d 56, 58 (1980). "Unless there are no conflicting inferences to be drawn it is far better to hear the defense so that the appellate court may have the benefit of findings of fact and conclusions of law." *Shechter v. Shechter*, 366 Pa. 30, 32–33, 76 A.2d 753, 755 (1950). Finally, a non-suit may only be entered where "the facts and circumstances lead unerringly to but one conclusion" *Paul v. Hess Bros.*, 226 Pa.Super. 92, 94–95, 312 A.2d 65, 66 (1973).

The appellants first contend that they successfully presented a *prima facie* case so that the entry of a compulsory non-suit was erroneous.

Appellants' complaint indicates that they proceeded on two direct theories of recovery.[2] There is first a theory of breach of contract, and second a theory sounding in negligence. The breach of contract theory contends that the Personal Home Care facility had contracted to care for Mr. Mohler, and failed to do so. The negligence claim contends that the Home Care Facility was negligent in its operation and breached its duty of care to Mr. Mohler.

Viewing the evidence presented by the plaintiff in its entirety and accepting all reasonable inferences in the plaintiff-appellant's favor, we note the following facts. The plaintiffs were paying $850.00 a month for care at the J & K personal boarding home. According to the testimony of Margaret Splane, decedent's daughter, this care entailed meals, supervision, laundry services, and other people around for communication. On her cross examination she testified that the decedent's physician, Dr. Singh advised that decedent was able to care for himself and did not need to go into a skilled nursing facility. She testified that he was ambulatory and continued to be ambulatory until the time of his fall.

The agreement signed by all parties relating to the care of Mr. Mohler stated, in the section headed "Resident Rights", that "[t]he resident is not restricted in his/her right to leave". The testimony of the night duty attendant, called by the plaintiff, indicated that after the decedent's return from the hospital on the night in question, he was disoriented and confused. He was put to bed, and around 3:15 a.m. he arose in a state of delirium, stated he had to get home to see "the baby", pushed his way past an attendant who tried to stop him, and ran out of the facility. While outside, Mr. Mohler fell and injured himself.

Appellants contend that the trial court erred in granting the non-suit because the plaintiffs had established a prima facie case of breach of contract. They rely on allegations of mismanagement, statutory violations, misadvertising,

---

2. The third claim was that of Mr. Mohler's wife, for the loss of service and society.

lack of established procedures, and untrained staff as foundation for this claim. Even when all these alleged breaches are accepted as true for purposes of considering the nonsuit, the appellants are not entitled to recover.

In order for a plaintiff to recover incidental damages under a breach of contract theory, the damages suffered must be direct and foreseeable results of the breach. *Reimer, supra,* 356 Pa.Super. at 208, 514 A.2d at 575. Further, losses are not recoverable in a breach of contract action when there is no causal relationship between the breach and the loss. *Robinson Protective Alarm Co. v. Bolger & Picker,* 512 Pa. 116, 122–3 note 9, 516 A.2d 299, 303 note 9 (1986).

The decedent had a right to leave and exercised that right in spite of the night duty attendant's opposition. He was injured while outside of the premises. None of the alleged breaches of contract committed by the defendant as enumerated by the plaintiff in his complaint caused this particular injury. The contract entered into by the plaintiff and defendant called for provision of meals, a room with furnishings, assistance in providing medicines, management of personal affairs, and laundry. It did not call for 24 hour supervision or restraint. In fact, as required by the appropriate administrative regulation regarding personal care home contracts, the contract itself called for nonrestriction of the resident's freedom to leave.[3] The unforeseeable aberrant behavior of the plaintiff following his release from the hospital caused his injuries; not an alleged training, management, or statutory violation.

The trial court additionally noted that the argument presented by the plaintiffs was, in effect, that the acceptance of a resident implies an agreement to protect him from harm no matter how or where it occurs, even in circumstances such as existed here wherein a health care facility has impliedly certified that the resident is mentally fit to be kept in a personal care home. The learned trial judge

3. Title 55, § 2620.14 of the Pennsylvania Code.

rejected this argument. We agree with that determination, and note that the personal care home did not agree in its contract to become an insurer of its clients. This claim of breach of contract therefore fails.

Appellant next claims that the defendant-appellee failed to meet its standard of care and thus was negligent. Relying in large part upon certain restatement sections relating to the duties of a care provider, they contend J & K should be held to a high standard of care and thus liability because they failed to supervise and train the staff to care for Mr. Mohler correctly, increasing the risk of harm to him. The argument further asserts that once evidence of this increased risk of harm is introduced, the case must go to the jury.

We begin our analysis by noting that personal care homes are regulated by the Commonwealth in Title 55, § 2620 *et seq.* of the Pennsylvania Code and provide a lower cost alternative to an intermediate care facility with skilled personnel or a nursing home for constant care. In order to qualify for this type of care and be admitted to a personal care home a person must have a certificate from a licensed physician stating that he does not require the services of an intermediate care or skilled nursing facility. Mr. Mohler had such a certification.

Section 2620.33 provides specifically those services to be supplied by a personal care home-assistance in personal hygiene, tasks of daily living, medications, and financial management. Other sections specify the required types of laundry services, food services, sleeping quarters, furniture, housekeeping, maintenance, and fire safety.

Staff requirements are set forth in sections 2620.31 and 2620.32 and essentially state that the staff members must be over 16 to provide personal services, over 18 for a person responsible for the operation of the home, and be of good character and good health with the ability to follow directions. The personal care home as set forth in the regulations clearly does not anticipate any degree of specialized care other than basic assistance.

The procedure for removing a resident from the home is explicitly spelled out in the administrative regulations. Section 2620.35 states in pertinent part that:

(a) If the resident becomes suddenly ill or injured and is unable to secure necessary care, the provider shall secure necessary assistance or care. Arrangement shall be made in advance between the provider and the resident regarding the physician or dentist and designated person or community agency to be contacted in case of illness or injury and the persons shall be contacted.

(b) If the resident's medical situation, as determined by a physician, indicates the need for a transfer to a health care facility, the provider shall notify the resident's designated person and shall provide whatever assistance is necessary in making arrangements for the resident's transfer to an appropriate facility.

The evidence indicates that when the plaintiffs were looking for care for Mr. Mohler, they were presented with three options. They could have attempted to care for him at home; sent him to an expensive skilled care nursing home (Mr. Mohler was transferred to St. Joseph's home, which cost $1800 to $1900 a month), or a personal care home (for about $850 a month). After consulting with Mr. Mohler's physician, a personal care home was selected.

While at the personal care home, Mr. Mohler experienced a number of spells of disorientation. He was returned by the hospital each time, and his physician allowed him to remain in the personal care home. There was no evidence of any harm to the plaintiff during any of these spells, nor was there any testimony that he had ever tried to push his way out of the home before the incident which resulted in his injury. Each time the victim experienced dementia or disorientation, he was brought to the hospital to be examined. The last time was no different from any of the others, and there was no evidence to indicate that the home was then incapable of keeping Mr. Mohler as a boarder.

■ Initially, we note that the appellee has complied with the administrative regulation regarding personal care homes. However, compliance with administrative regulations only relieves the defendant of liability for negligence *per se*, and does not establish that due care was exercised. *Berkebile v. Brantly Helicopter Corp.*, 219 Pa.Super. 479, 281 A.2d 707 (1971).

Appellant, to establish the standard of due care, points to Section 314(A) of the Restatement of Torts, Second, which provides as follows:

1. A common carrier is under a duty to its passengers to take reasonable action.

(a). To protect them against unreasonable risk of physical harm.

(b). To give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

. . . . .

4. One who is required by law to take or who voluntarily takes the custody of another under circumstance such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

We further note that this court has adopted the view of the Restatement of Torts, Second, for purposes of liability regarding services rendered. *Cantwell v. Allegheny County*, 319 Pa.Super. 255, 466 A.2d 145 (1983). See also *Patentas v. United States*, 687 F.2d 707 (3d Cir.1982) where the Third Circuit has adopted this view. The Restatement notes, at section 323 the general rule to be followed in such a case:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance on the undertaking.

Appellant contends in his negligence claim that both avenues establishing liability have been shown; *i.e.*, that the failure of the defendants in the overall training programs of their staff increased the risk of harm to the plaintiff, and the harm resulted from the failure of the defendants to exercise reasonable care to perform their undertaking.

■ Pennsylvania, however, has long held that the actions of the defendant must be *unreasonable*, or expose the plaintiff to an elevated risk of *foreseeable* harm. See, *e.g.*, *Maize v. Atlantic Refining Co.* 352 Pa. 51, 41 A.2d 850 (1945) (The law imposes a duty to use due diligence to avoid causing harm, which duty is breached by any legally harmful act or omission which might have been foreseen and avoided); *Cantwell v. Allegheny County, supra* (One who undertakes to render services is liable to third persons if failure to exercise reasonable care increases the risk of *such* harm [emphasis added] ); *St. Clair v. B & L Paving Co.*, 270 Pa.Super. 277, 411 A.2d 525 (1979) (Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a social duty imposed by law to act without negligence; the social duty extends to persons who are within the foreseeable orbit of harm, even though they may be strangers to the contract); *Sowicz v. U.S.*, 368 F.Supp. 1165, *affirmed*, 505 F.2d 731 (E.D.Pa. 1973) (Negligence is the failure to do what is reasonable under the circumstances, or the doing of an act which is unreasonable under the circumstances).

■ The evidence as put forth during the plaintiffs' case shows that the defendants acted reasonably. This is especially true in light of the administrative regulations reproduced above. When the plaintiffs' decedent acted in an incoherent manner, he was taken to the hospital to be

examined. The treating physician permitted his return, and he was put to bed. The appellants place great emphasis on the fact that this had happened many times before and thus the defendants should have been on notice that Mr. Mohler needed extra care. The evidence unequivocally supports the opposite proposition. Each time a period of incoherence occurred previously, Mr. Mohler had been returned to the home and put to bed, and that was the end of the episode. There was nothing to indicate that Mr. Mohler's behavior would be any more unusual on the evening of his accident. The attendant attempted to stop Mr. Mohler, and was unable to. We disagree with appellant's contentions; clearly this was reasonable, and the events which transpired that evening resulting in injury to Mr. Mohler were not foreseeable.

Appellants also contend that the overall training of the staff led to an increased risk of harm to Mr. Mohler and thus created another source of liability. For purposes of clarity, we reiterate the restatement section relied upon by the plaintiff in pertinent part:

> One who undertakes ... to render services to another ... is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care ... if his failure to exercise such care increases the risk of *such harm.* [emphasis added] *Restatement of Torts, Second,* Section 323

Appellants claim that installation of door buzzers to alert the staff of a resident's exiting the building, entry in a log book of a notation to keep a close watch on Mr. Mohler, and, somehow, a new corporate charter (Jeke, Inc.'s charter was initially granted to a restaurant) would have reduced the risk of harm to Mr. Mohler. These claims are clearly unsupported by the evidence. The attendant in this instance was aware of Mr. Mohler's attempt to leave the facility, and attempted to stop him. How further training would have altered the situation is unclear, as Mr. Mohler physically pushed his way past her. The buzzer would have served to indicate that which was apparent to the attend-

ant—that Mr. Mohler was leaving the facility. Entry of a notation in the log book would not have further assisted the attendant in stopping Mr. Mohler, and we fail to see how the origins of the corporate charter have any relevance to the situation.

The lower court determined that causation was lacking in these contentions, and we agree with that determination. The risk that this particular harm would occur was not elevated by the alleged failings of the personal care home, as required in Restatement section 323. The unfortunate incident involving Mr. Mohler was not foreseeable at the time it occurred, and the defendants did act reasonably.

■ This court has noted previously that the mere happening of an accident does not give rise to a presumption of negligence. *Commonwealth v. King*, 298 Pa.Super. 499, 444 A.2d 1294 (1982). The plaintiff bore a burden of showing that the elements of negligence had been established, and did not do this with the evidence it presented. We therefore will not disturb the decision of the lower court.

■ Appellant additionally claims that the lower court erred in suppressing evidence relating to the training of the staff and defendants. We initially note that the admissibility of evidence is a question left to the sound discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985). At trial, a defense objection was sustained when plaintiff's counsel attempted to elicit testimony as to the educational levels and prior training of Defendant Jeke. The trial judge, relying on the administrative guidelines set forth in the Pennsylvania Code, determined that all that was necessary as a minimum qualification to run a personal care home was ordinary common sense. As we agree that training is unrelated to this particular cause of action, we do not find an abuse of discretion in the sustaining of the objection, and therefore

decline to reverse the decision of the lower court in that regard.

In a related claim, the appellant asserts that the trial court erred in equating a licensing standard with the standard of care. Specifically, the appellant claims that the lower court erred in finding that as the vague licensing standards had been met, a finding of negligence was precluded. As we have already determined that appellant could not prevail on the negligence claim based on the standard of care, this claim is moot and need not be addressed here.

 Appellant finally claims that the lower court erred in granting a non-suit as all the evidence was oral testimony, and thus it was for the jury to decide the credibility of the witnesses. Appellants cite *Kopar v. Mamone*, 419 Pa. 601, 215 A.2d 641 (1966) in support of this proposition. In that case, a directed verdict for the plaintiffs which was founded on oral testimony, even though uncontradicted, could not stand.

The rationale behind such a holding can be traced back to the words of Justice Musmanno of our supreme court in *Dorn v. Leibowitz*, 387 Pa. 335, 340, 127 A.2d 734, 737 (1956). "From time immemorial, it has been the province of the jury, in trespass cases, where oral testimony is concerned, to pass upon the credibility of witnesses, even though uncontradicted by *defendant* witnesses or even though the *defendant* introduces no testimony at all." (emphasis added)

The due process orientation of this argument is self-evident. If the law is to impose liability upon a defendant (and thus create a victory for the plaintiff) then issues of credibility must be passed upon so as not to deprive a person of property without the due process rights afforded him or her under the Federal and State Constitutions. However, that differs from the case instantly. In the granting of a non-suit, there are no due process considerations as the *defendant* has prevailed. The trial judge in

this case ruled that the plaintiff had not put forth enough evidence to establish a cause of action. Our standard of review, which entails taking all the evidence in the light most favorable to the plaintiff, ensures that there is no need to pass upon the credibility of the witnesses. Thus, this claim must fail.

Order affirmed.