Thomas S. BRANTNER and Linda Brantner, his wife, Plaintiffs,

v.

BLACK & DECKER MFG. CO., a/k/a Black & Decker (U.S., Inc.).

Civ. A. No. 93–1J.

United States District Court, W.D. Pennsylvania.

Aug. 26, 1993.

Eric Zajac, Philadelphia, PA, for plaintiffs.

John Hall, Pietrogallo, Bosick & Gordon, Pittsburgh, PA, for defendant.

## MEMORANDUM ORDER

D. BROOKS SMITH, District Judge.

What remains after my August 23, 1993 Memorandum Order granting summary judgment on plaintiffs' strict liability claims are plaintiffs' causes of action in negligence and breach of warranties. I rule as follows on defendant's motion for judgment as a matter of law. Fed.R.Civ.P. 50(a):

*Breach of warranties:*

■ Plaintiffs' complaint in count III alleged a breach of Black & Decker's implied and express warranties to Brantner. To establish the existence of an implied warranty of fitness for a particular purpose, there must be evidence that (1) the seller had reason to know of the particular purpose for which the buyer is purchasing the product and (2) the seller knows that the buyer is relying on its skill and judgment to furnish the proper good. 13 Pa.C.S. § 2315; *see Altronics of Bethlehem Inc. v. Repco, Inc.,* 957 F.2d 1102, 1105 (3d Cir.1992). Some evidence has been introduced to support plaintiffs' allegation, Complaint ¶ 21, that at the time of sale in 1960 Black & Decker knew or had reason to know that the drill was being purchased for the particular purpose for which Brantner eventually employed it. That evidence was the testimony by Mr. Kotler that Brantner's use of the drill was foreseeable to Black & Decker in 1960. There was, however, no evidence which tended to show that Black & Decker knew that its skill and judgment was being relied on to furnish a suitable product.

■ The claim for breach of the implied warranty of merchantability is summarily dismissed. The evidence of record shows that the drill functions adequately as a drill and has done so for more than thirty years. It is, therefore, fit for its "ordinary purpose." 13 Pa.C.S. § 2314(b)(3).

Any claim for breach of express warranties made at the time of sale or afterward was deemed withdrawn at oral argument on the Rule 50 motions.

*Negligence*

This matter is not a negligence case any more than it is a breach of warranties case. Once the strict liability count was dismissed,[1] plaintiffs should have withdrawn, or plaintiffs and defendant should have agreed to dismiss with prejudice, the two tag-along counts and proceeded to take an appeal if the correctness of my ruling on the motion for summary judgment is at issue. Nonetheless, defendant did not timely move for summary judgment on the negligence count, and plaintiffs appear not to have prepared their case with an eye to trying anything but a strict liability claim. It has been necessary, therefore, to proceed with a live jury trial to a conclusion that has been foreseeable, to use a term of art, since the opening statement.

As the Court of Appeals stated in *Griggs v. BIC Corp.,* 981 F.2d 1429, 1434 (3d Cir.1992):

> Pennsylvania courts have set forth the elements of negligence as follows:
>
> 1) A duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks;

---

1. Counsel for the parties were well-aware, based on our conference call the Friday before trial, that the Rule 56 motion was receiving serious attention, but that even if granted, negligence and warranty counts remained.

2) A failure to conform to the standard required;

3) A causal connection between the conduct and the resulting injury; and

4) Actual loss or damage resulting to the interests of another.

*Morena v. South Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680, 684 n. 5 (1983) (citing William L. Prosser, *Law of Torts* § 30, at 143 (4th ed. 1971); *Fennell v. Nationwide Mut. Fire Ins. Co.*, 412 Pa.Super. 534, 603 A.2d 1064, 1066–67 (1992). At issue in this aspect of the present case is the element of duty. Normally, "[t]he determination of what duty, if any, a defendant owes a potential plaintiff is a question of law." *Burton v. Terry*, 140 Pa. Commw. 336, 592 A.2d 1380, 1383 (1991), *appeal denied*, 529 Pa. 665, 604 A.2d 1031 (1992).

■ The establishment of the defendant's duty, where it is not based on the existence of an exogenous standard such as a statute or administrative regulation, is determined according to *Griggs* by a two-part test: (1) whether the risks of injury were foreseeable; and (2) whether the foreseeable risks were unreasonable. 981 F.2d at 1935. *See also Mazzagatti v. Everingham*, 512 Pa. 266, 516 A.2d 672 (1986). Phrased another way, "the actions of the defendant must be *unreasonable*, or expose the plaintiff to an elevated risk of *foreseeable* harm." *Mohler v. Jeke*, 407 Pa.Super. 478, 595 A.2d 1247, 1252 (1991).

*Foreseeability*

■ Plaintiffs, because they primarily were preparing this matter as a products liability claim, and because they viewed foreseeability as a component of the intended use of the product, have adequately produced evidence that the risks of harm from the design of an end-handled drill, even with chucks and bits altered from the originally marketed equipment, were foreseeable to Black & Decker in 1960. The law concerning foreseeability has been recently summarized by the Court of Appeals in *Kleinknecht v.*

*Gettysburg College*, 989 F.2d 1360, 1369 (3d Cir.1993):

The type of foreseeability that determines a duty of care, as opposed to proximate cause, is not dependent on the foreseeability of a specific event.

\* \* \* \* \* \*

Only when even the general likelihood of some broadly definable class of events, of which the particular event that caused the plaintiff's injury is a subclass, is unforeseeable can a court hold as a matter of law that the defendant did not have a duty to the plaintiff to guard against that broad general class of risks within which the particular harm the plaintiff suffered befell. (citations omitted).

Plaintiffs' expert engineer, Mr. Kotler, testified that principles of torque have been well understood since the work of Isaac Newton (1642–1727). He further opined that the interchangeability of chucks and bits of different sizes by the purchaser of a Black & Decker drill such as Plaintiffs' Exhibit 1 was foreseeable in 1960. He further testified that any reasonable alteration in bits or chucks would not have altered appreciably the torque encountered by the user of the drill if the drill were to bind.[2] Mr. Kotler also expressed his opinion with a reasonable degree of certainty that the injury to Brantner was caused by the torque force of the Black & Decker drill when it grabbed the hole Brantner was enlarging.

*Unreasonableness*

The standard under Rule 50(a), like the task of the Court in *Griggs* on review of a summary judgment motion under Rule 56, is to determine whether plaintiffs have introduced sufficient evidence of the elements of a cause of action to allow a reasonable jury to find in their favor. *See Urti v. Transport Commercial Corp.*, 479 F.2d 766, 768 (5th Cir.1973). Plaintiffs' duty as to this element of the cause of action is to come forward with some evidence that Black & Decker's deci-

---

**2.** Mr. Kotler, consistent with his expert report cited in the summary judgment ruling, did not contend that the type of task Brantner was per-

forming would not have significantly influenced the tendency of the drill to bind in the first place.

sion to design this drill was unreasonable in light of the foreseeable risks.

Where plaintiffs' proof is insufficient is in proving the unreasonableness of defendant's decision to market this end-handled drill. Mr. Kotler opined that a Black & Decker's design was "unreasonably dangerous" because a drill generating the same level of torque as by Plaintiffs' Exhibit 1 was unsafe without a pistol grip or side stabilizer bar.

In deciding whether the risk foreseeable to Black & Decker was unreasonable, the Pennsylvania Supreme Court, according to Griggs, would apply a risk-utility analysis. 981 F.2d at 1435. That analysis balances the scope of the risk against the value of the defendant's interest and "the expedience of the course pursued," 981 F.2d at 1436, quoting Prosser and Keeton on the Law of Torts § 31, at 173 (5th ed. 1984). The plaintiff must show, in a design defect case brought under a *negligence* theory, some information about the scope of the risk known to the defendant at the time of the marketing of the product. That is not the case in a strict liability action, *see Habecker v. Clark Equipment Co.*, 942 F.2d 210, 215 (3d Cir.1991), where liability for an unsafe product attaches despite any lack of knowledge of the risks involved. If plaintiffs intended to persist in their negligence theory, however, it was incumbent upon them to introduce testimony on this element of the cause of action. Based on the record at trial, there is information that Mr. Brantner and Mr. Young were injured years after the sale of this drill. No information establishes the scope of injuries that Black & Decker knew or should have known in 1960 would be caused by the torque forces exerted by this drill when it bound or grabbed. Torque, as Mr. Kotler testified, has been understood for centuries.

Mr. Kotler also testified that in his opinion the Black & Decker drill was essentially a defective product because a drill with the power to generate 15 foot pounds of torque should not be equipped with an end handle due to the risk of an injury like Brantner's. There is no evidence of record, however, that Black & Decker could foresee the scope of that risk when it marketed the drill in 1960. In fact, from the lack of evidence of other torque-related incidents even between 1960 and 1990, no argument can be made that Black & Decker should even have subsequently realized the danger and warned users. *See Walton v. Avco Corp.*, 530 Pa. 568, 610 A.2d 454, 459 (1992).

There similarly was no evidence from plaintiffs that the risk outweighed the social value of the defendant's product. On cross-examination, Mr. Kotler conceded that he did not know what design criteria had influenced Black & Decker's choice of an end-handled design over a pistol grip or stabilizer bar. Mr. Kotler also conceded that he did not know whether other manufacturers, in 1960 or today, continue to market end-handled designs on similar drills, or whether the end-handled design complies with ANSI standards. Evidence of compliance with industry standards, although inadmissible in products liability cases, *Lewis v. Coffing Hoist Division*, 515 Pa. 334, 528 A.2d 590 (1987), is relevant to show lack of negligence even though it does not *per se* show due care. *See Mohler v. Jeke*, 407 Pa.Super. 478, 595 A.2d 1247, 1251 (1991); *McGowan v. Devonshire Hall Apartments*, 278 Pa.Super. 229, 420 A.2d 514, 521 (1980). Finally, Mr. Kotler conceded that his proposed alternate design, at least insofar as it included a stabilizer side bar, would prevent a drill from reaching some narrow spaces reached by Black & Decker's design.

There was evidence, in part, on alternative courses open to Black & Decker. Mr. Kotler testified that a pistol grip, shovel handle, or stabilizer side bar could be designed for a drill at a comparable cost to Black & Decker's end-handled model. There was no testimony, however, that the drill as re-designed would have been capable of doing the same tasks as Black & Decker's model, however, and Mr. Kotler conceded that in some cases it could not.

In summary, because plaintiffs have not come forward with evidence that Black & Decker acted unreasonably in marketing Plaintiffs' Exhibit 1 as an end-handled drill in 1960, judgment as a matter of law must be entered on the negligence counts on the basis of Black & Decker's lack of duty. It is not necessary to address the alternative theories

advanced by Black & Decker such as comparative negligence and assumption of risk.

Defendant's motion to strike the testimony of Mr. Kotler is denied.