Stephen A. SHAMNOSKI and Dorothy Shamnoski, His Wife Individually and as Parents and Natural Guardians of Stephen J. Shamnoski, William D. Shamnoski, Anthony G. Shamnoski, and Ellen M. Shamnoski, Their Children, Appellees,

v.

PG ENERGY A DIVISION OF SOUTHERN UNION COMPANY, formerly known as PG Energy, Inc., et al., Appellants,

v.

Commonwealth of Pennsylvania, Department of Environmental Resources, Appellee.

Appeal of PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc.

Richard Rubel and Adele Rubel, His Wife, Individually and as Parents and Natural Guardians of Richard Rubel, Jr., Kevin Rubel and Karra Rubel, Their Children, Appellees,

v.

PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc., et al., Appellant.

Appeal of PG Energy a Division of Southern Union Company, formerly known as PG Energy, Inc.

Lorraine McDonald, Appellee,

v.

PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc., et al., Appellant.

Appeal of PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc.

Richard Rubel and Adele Rubel, His Wife Individually and as Parents and Natural Guardians of Richard Rubel, Jr., Kevin Rubel and Karra Rubel, Their Children, Route 502, Box 487, R.D. # 4, Moscow, Lackawanna County, PA., Appellees,

v.

PG Energy, A Division of Southern Union Company, formerly known as PG ENERGY, INC., et al., Appellant.

Appeal of PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc.

Lorraine McDonald, 701 South Main Street, Scranton, Lackawanna County, PA, Appellee,

v.

PG Energy A Division of Southern Union Company, formerly known as PG Energy, Inc., et al., Appellants.

Appeal of PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc.

Stephen A. Shamnoski and Dorothy Shamnoski, His Wife, Individually and as Parents and Natural Guardians of Stephen J. Shamnoski, William D. Shamnoski, Anthony G. Shamnoski and Ellen M. Shamnoski, Their Children, 708 Spring St., Moosic Lackawanna County, PA, Appellee,

v.

PG Energy A Division of Southern Union Company, formerly known as PG Energy, Inc., et al., Appellant.

Appeal of PG Energy, A Division of Southern Union Company, formerly known as PG Energy, Inc.

Superior Court of Pennsylvania.

Argued Sept. 27, 2000.

Filed Dec. 1, 2000.

Reargument Denied Feb. 9, 2001.

John P. Moses, Wilkes-Barre, for appellant.

Conrad A. Falvello, Sugarloaf, for appellee.

Before KELLY, ORIE MELVIN and MONTEMURO *, JJ.

MONTEMURO, J.:

¶ 1 Appellant appeals from a final decree of the Luzerne County Court of Common Pleas. We affirm in part and reverse in part.

¶ 2 Appellees, the owners of real and personal property along the banks of Springbrook Creek, Luzerne County, were unaware that the property was located in a flood plain. Appellant owned and operated three major water supply dams in the Springbrook watershed area, Watres Reservoir/Dam (Watres), Nesbitt Reservoir/Dam (Nesbitt) and the Springbrook Intake Reservoir/Dam (Springbrook), all of which were located upstream from Appellees' properties.

¶ 3 On September 27, 1985, Hurricane Gloria struck Luzerne County with heavy precipitation exceeding fifty percent of the hypothetical probable maximum flood level, that is, an estimate of the largest flood to which this reservoir/dam would be subjected, and overwhelming the hydraulic capacity of Springbrook, the reservoir/dam closest to Appellees' property. The excess water from Springbrook caused severe flooding which resulted in total loss of Appellees' real estate, homes, and personal property.

¶ 4 Between 1978 and 1980, it had been reported to Appellant by the Army Corps of Engineers that its three dam system was seriously deficient. Both Watres and Nesbitt could pass only forty to fifty percent of the water from a probable maxi-

* Retired Justice assigned to Superior Court.

mum flood before water in the reservoir would overtop the dam. The spillways were declared seriously inadequate, and the dams themselves classified as high hazard reservoir/dams pursuant to the Dam Safety and Encroachment Act, 32 P.S. § 693.1, *et seq.* (the Act). At that time, Appellant was also warned that should Watres fail due to overtopping, its failure would trigger the overtopping of Nesbitt, placing downstream life and property at increased risk.

¶ 5 In April 1980, Appellant received approximately the same information concerning Springbrook: it could only pass approximately fifty-three percent of the water from a probable maximum flood before a spillover occurred; the dam's spillway was rated inadequate; and, like Watres and Nesbitt, Springbrook was classified as a high hazard reservoir/dam pursuant to the Act.

¶ 6 It had been recommended to Appellant that during periods of unusually heavy rain twenty-four hour surveillance of the dam system be maintained. The caretaker employed by Appellant for the Watres, Nesbitt, and Springbrook dams was required to take daily spillway measurements of all three. On September 27, 1985, the caretaker began his workday at approximately 6:00 a.m., and took his last spillway measurement on September 27, 1985 before 10:00 a.m. He was relieved of duty at 2:30 p.m., and thereafter no surveillance personnel was present at any of the dam sites, and no further spillway measurements were taken until approximately 8:00 a.m., September 28, 1985, after Appellees' property was damaged.

¶ 7 At no time prior to the September 27, 1985 hurricane did Appellant take steps to improve, increase, modify or change in any substantial manner the spillway capacity of any of its three dams. Thus, when the hurricane struck, no practical mechanism existed to diminish the water levels at any of the sites.

¶ 8 Moreover, emergency warning systems and operation plans were in place which provided that Appellant would maintain continuous twenty-four hour surveillance at each of the three reservoir/dam sites during heavy precipitation; would require all persons providing surveillance to remain at their stations until relieved by an official of Appellant; and would issue warnings to downstream owners and municipalities. Appellant failed to comply with these requirements, and most critically, at no time prior to the flooding of Appellees' property did it issue any warnings to downstream owners or municipalities pursuant to the emergency warning system and operation plan.

¶ 9 The trial court found that Appellant's negligence was the cause of Appellees' damages, and awarded compensatory and delay damages. The instant appeal followed.

> On appeal, the standard of review of a decision by an equity court is limited, and ... [a] chancellor's findings of fact will not be disturbed absent an abuse of discretion, capricious disbelief of the evidence, or a lack of evidentiary support on the record for the findings. A chancellor's conclusions of law are subject to stricter scrutiny. Unless the rules of law relied on are palpably wrong or clearly inapplicable, however, a grant of injunctive relief will not be reversed on appeal.

*Carroll v. Ringgold Educ. Ass'n*, 545 Pa. 192, 680 A.2d 1137, 1140 (1996) (citation omitted).

¶ 10 As Appellant's offending facilities are reservoirs, they are regulated by the Dam Safety and Encroachments Act, *supra*, which requires that Appellant, *inter alia*,

(1) monitor, operate and maintain the facility in a safe condition in accordance with the regulations, terms and conditions of permits, approved operating plans and orders of the department issued pursuant to this act;

* * *

(3) immediately notify the department and responsible authorities in downstream communities of any condition which threatens the safety of the facility, and take all necessary actions to protect life and property, including any action required under an emergency plan or department order issued pursuant to this act. . . .

Dam Safety and Encroachments Act, 32 P.S. § 693.13(a)(1)–(3).

¶ 11 The word "safety" is defined by the Act as, "[s]ecurity from the risk or threat of significant loss or injury to life, health, property and the environment." 32 P.S. § 693.3. In addition, "the owner of any high hazard dam which has been classified as such by the Department of Environmental Resources shall post notices in public places in any area which might be affected by the failure of the dam." 32 P.S. § 693.13(b). The trial court specifically found that Appellant violated § 693.13 and accompanying regulations by failing to maintain adequate spillways, failing to draw down the water levels of its dams, failing to follow its emergency action plan, and failing to warn individuals and municipalities whose property was at risk of flooding. As these factual findings are supported by the record, we will not disturb them on appeal.

■ ¶ 12 "A cause of action in negligence has four essential elements: (1) a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff; (2) a breach of that duty by the defendant; (3) a causal connection between the defendant's conduct and the injury suffered by the plaintiff; and (4) actual loss or damage suffered by the plaintiff." *Schmoyer v. Mexico Forge, Inc.,* 437 Pa.Super. 159, 649 A.2d 705, 707 (1994). Specifically, we have held that an owner of a reservoir is "required to exercise a degree of care commensurate with the risk of storing water in [a] reservoir and would be liable if its negligence made it possible for water to escape with resulting damage to property." *Albig v. Municipal Auth. of Westmoreland County,* 348 Pa.Super. 505, 502 A.2d 658, 664 (1985).

■ ¶ 13 We find Appellant was subject to a legal duty to comply with § 693.13, including, most importantly, a duty to operate and maintain the reservoirs in a safe manner. "The concept of negligence *per se* establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm. . . . Moreover, in analyzing a claim based on negligence *per se,* the purpose of the statute must be to protect the interest of a group of individuals, as opposed to the general public, and the statute must clearly apply to the conduct of the defendant." *J.E.J. v. Tri-County Big Brothers/Big Sisters, Inc.,* 692 A.2d 582, 585 (Pa.Super.1997). "Further, it is well settled that there must be a direct connection between the harm meant to be prevented by the statute, and the injury complained of." *Gravlin v. Fredavid Builders and Developers,* 450 Pa.Super. 655, 677 A.2d 1235, 1239 (1996), *appeal denied,* 546 Pa. 694, 687 A.2d 378 (1996).

■ ¶ 14 Here, Appellant's violations of 32 P.S. § 693.13 constituted negligence *per se.* The statute is designed to protect the interests of a specific class of individuals, *i.e.,* those living on and/or owning property downstream from a dam. The statute clearly applies to the Appellant's conduct as owner and operator of three dammed reservoirs that were specifically regulated by the Act. Further, there was a direct connection between the harm meant to be prevented and the injury complained of. One of the purposes of the statute is to protect downstream residents from flooding, the exact result of Appellant's operation of the dams. Therefore, we find that a violation of § 693.13 constitutes negligence *per se,* and, consequently, establishes the first two elements of Appellees'

negligence claim. As the record contains evidence that this flooding was at the very least a substantial factor in Appellees' damages, the trial court was correct in finding that Appellees were entitled to recover on a negligence theory. Although the trial court did not mention the concept of negligence *per se* in its Opinion, we may affirm its decision on any basis. *Boyer v. Walker*, 714 A.2d 458, 463 n. 10 (Pa.Super.1998).

¶ 15 We recognize the position of the United States Court of Appeals for the Third Circuit that violation of the provisions of 32 P.S. § 693.13 does not constitute negligence *per se*. *Beaver Valley Power Co. v. National Eng'g & Contracting Corp.*, 883 F.2d 1210, 1222 (3rd Cir. 1989). However, the decisions of the Third Circuit are not binding on this Court. *Meyer v. Gwynedd Development Group, Inc.*, 756 A.2d 67, 69 (Pa.Super.2000). Moreover, the *Beaver Valley* Court held as it did because the requirements of § 693.13 merely echo the general "reasonableness" standard. The Court stated that, "[t]he general exhortations to maintain the facility in a 'safe' condition and to take 'necessary' action to protect property at most tell the permit holder to act as the reasonable person would." *Beaver Valley, supra* at 1222. Thus, the case actually stands for the proposition that the standards set by the statute are the same as those that would exist in its absence. Thus, violation of the statute does constitutes negligent conduct. Here, we hold as we do simply because we find it simpler to regard the Act as the absolute standard of conduct governing dam owners rather than to ignore the statute and create a parallel, abstract, "reasonable person" standard.

¶ 16 Appellant argues, first, that it did not breach any duty it may have owed to Appellees. As discussed above, there is evidence in the record that Appellant failed to conform to 32 P.S. § 693.13; that fact alone constitutes both the duty and the breach elements of negligence. Appellant states that the dams never breached, leaked, or failed; that they were properly permitted at all times; and that they complied with all applicable provisions of the Act and accompanying regulations. It has already been established that Appellant did not comply with § 693.13 of the Act. The fact that the facilities were permitted does not automatically lead to the proposition that Appellant could not have been negligent. *Mohler v. Jeke*, 407 Pa.Super. 478, 595 A.2d 1247, 1251 (1991). Further, the fact that the dam did not breach, leak or fail is immaterial; there is no disagreement that it overflowed.

¶ 17 Next, Appellant argues that it had no duty to issue warnings to downstream residents prior to Hurricane Gloria. 25 Pa.Code § 105.134 required Appellant to "develop an emergency action plan to be followed in the event of a dam hazard emergency." Appellant's emergency action plan specified that warnings would be issued to downstream property owners and municipalities in the event of a "dam hazard emergency," which is defined by regulation as "a condition which the ... permitee or owner of the dam reasonably finds constitutes an imminent threat to life or property above or below a dam, whether arising from the condition of the dam and appurtenant works or extraordinary natural conditions, affecting the safety and stability of the dam, including, but not limited to, flood, earthquake, fire and ice jam." 25 Pa.Code § 105.135(a). Although hurricanes are not explicitly listed in the regulation, the list is not exclusive, and Appellant should have been aware that hurricanes pose an imminent threat to property below its dam. We therefore find that the onset of Hurricane Gloria constituted a "dam hazard emergency," and, therefore, triggered Appellant's obligation to follow its emergency action plan and issue warnings to downstream residents and municipalities. In addition, § 693.13(a)(3) required Appellant to "immediately notify ... responsible authorities in downstream communities of any condition which threaten[ed] the safety of the facility."

¶ 18 Appellant argues that the hurricane did not constitute a dam hazard emergency because it did not jeopardize the "safety" of the facilities themselves; it claims that the word "safety" only relates to the structural integrity of the dam, and that, therefore, when an overflow occurs, as opposed to a leak or break, the duty to initiate the emergency action plan and warn downstream residents is not triggered. On the contrary, "safety" is defined by the Act as "[s]ecurity from the risk or threat of significant loss or injury to health, property and the environment." 32 P.S. § 693.3. We therefore find that Appellant's duty to warn downstream property owners is triggered by any event which threatens life, health, property or the environment, regardless of whether the integrity of the dam is implicated. Consequently, Appellant had a duty to warn people downstream of the dangers posed by Hurricane Gloria.

¶ 19 Appellant also contends that it did not have a duty to draw down the water levels in its reservoirs prior to the onset of the hurricane. 25 Pa.Code § 105.135(c)(1) specifically requires Appellant to reduce the water levels in the event of a dam hazard emergency. As stated above, the hurricane was such an emergency, and, therefore, Appellant did indeed have a duty to draw down its water levels.

¶ 20 Next, Appellant asserts that "[i]n Pennsylvania, the owner of upper land has the right to have surface waters flowing on or over his land discharged through a natural water course onto the land of another." (Appellant's Brief at 34). However, this Court has held that the rule does not apply where "the owner of the higher land is guilty of negligence which causes unnecessary damage to the servient owner, or where, by an artificial channel, he collects and discharges surface waters in a body or precipitates them in greatly increased quantities upon his neighbor...." *Chamberlin v. Ciaffoni*, 373 Pa. 430, 96 A.2d 140, 143 (1953). In such a case, the servient owner "may recover for any damage thereby inflicted." *Id.* See also *Beals v. Robertson*, 356 Pa. 348, 52 A.2d 316, 317 (1947) (holding that upper land owners "may not concentrate and increase the flow of waters by artificial means" without liability for resulting damage to servient property).

¶ 21 Appellant argues that "[a]ll the water that fell in the Springbrook watershed and flowed into Springbrook Creek and, from there, over its banks onto [Appellees'] properties, would eventually have arrived there at some point, even if [Appellant's] water supply dams had never been built." (Appellant's Brief at 35). However, a dam builder may still be liable for damages to servient estates "even though no more water is thereby collected than would naturally have flowed upon the neighbor's land in a diffused condition." *Ridgeway Court, Inc. v. Landon Courts, Inc.*, 295 Pa.Super. 493, 442 A.2d 246, 248 (1981).

¶ 22 Next, Appellant claims that any theoretical negligence on its part was not the cause of Appellees' damages. It argues that "if [its] dams had never been constructed, the flooding of [Appellees'] properties not only would still have occurred, but the flooding would have been more severe." (Appellant's Brief at 41). Appellant insists that the sole cause of the damages was the hurricane, a *vis major*. However, we find that the trial court acted within its discretion in finding that adequate causation was proven. If a negligent act and an act of God combine to produce damages that would not have occurred absent negligence, and the negligent act was a substantial factor in causing the injury, liability attaches. *Hayes Creek Country Club, Inc. v. Central Penn Quarry Stripping & Construction Co.*, 407 Pa. 464, 181 A.2d 301, 307 (1962).

¶ 23 Specifically, the trial court found that, "had Appellant maintained adequate spillways on their reservoirs/dams, drawn down the water levels of their dams, and instituted and followed with [*sic*] emer-

gency action plan, damage to [Appellees'] property would not have occurred, or would not have been as severe." (Trial Ct. Op., 10/14/99, at 9). At trial, Appellees produced an expert who testified, essentially, that the damage was caused by Appellant's negligence. (N.T., 11/2/98, at 233–62). Therefore, the trial court acted within its discretion by so finding.

¶ 24 Appellant also claims that "even if [Appellant] had warned [Appellees] of possible flooding ... there is no evidence that [Appellees] would have heeded the warning or that it would have prevented the harm to [Appellees'] properties." (Appellant's Brief at 44). We find that a warning would certainly have prevented some of the damage, as it would have allowed those Appellees who were at home on September 27th to have moved personal property out of harm's way. There is evidence in the record to that effect. Appellee Richard Rubel testified that, shortly before his house was washed away, a friend suggested that personal property be removed from the house. (N.T., 11/2/98, at 127). Rubel decided that there was no need to do so. *Id.* As a result, salvageable property was unnecessarily destroyed.

¶ 25 Next, Appellant argues that the trial court abused its discretion by accepting Appellees' evidence of damages, which consisted of each Appellee's opinion as to the worth of the lost property. A property owner is "deemed qualified, by reason of his relationship as owner, to give estimates of the value of what he owns regardless of his knowledge of property valued, and the weight of such evidence is for the jury." *Pavloff v. City of Clairton,* 146 Pa.Super. 158, 22 A.2d 74, 75 (1941). Appellant claims that its own, better supported, evidence of damages was erroneously rejected by the trial court. However, it is within the discretion of the fact finder to believe or disbelieve evidence. Here, as the court's findings have support in the record, we may not disturb them.

¶ 26 Finally, Appellant argues that Appellees' delay damages should be reduced. Rule of Civil Procedure 238(a)(1) provides that "[a]t the request of the plaintiff in a civil action seeking monetary relief for ... property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant ... found to be liable to the plaintiff...." Further, "[d]elay damages merely compensate a plaintiff for the money that he would have earned on his award if he had promptly received it." *Costa v. Lauderdale Beach Hotel,* 534 Pa. 154, 626 A.2d 566, 569 (1993) (quotation omitted). "Conversely, delay damages also prevent a defendant from being unjustly enriched by keeping the interest that could be earned during the litigation process on what is essentially the plaintiff's money." *Id.* at 569 n. 6.

¶ 27 "[A]n appellate court will not reverse an award of ... delay damages unless there has been an abuse of discretion by the lower court." *Liberty v. Geneva College,* 456 Pa.Super. 544, 690 A.2d 1243, 1244 (1997).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Id.* (citation omitted).

¶ 28 Appellant argues that "to impose the delay damages in this case would unfairly penalize [Appellant] for pursuing meritorious defenses such as lack of duty and causation." (Appellant's Brief at 50). However, "[d]elay damages do not penalize a defendant that chooses to go to court;

they simply do not permit a defendant to profit from holding money that belongs to the plaintiff, by requiring the defendant to compensate the plaintiff for the loss of the use of that money during the time the defendant held it." *Costa, supra* at 570.

¶ 29 Appellant also contends that "[Appellees] were solely responsible for significant portions of the eleven year delay in bringing this case to trial." (Appellant's Brief at 49). "[T]he mere fact that a defendant is not at fault in causing the delay in a case does not automatically relieve the defendant from being assessed delay damages...." *Schrock v. Albert Einstein Med. Center,* 527 Pa. 191, 589 A.2d 1103, 1106 (1991). However, "[t]he period of time for which damages for delay shall be calculated ... shall exclude the period of time, if any, ... during which the plaintiff caused delay of the trial." Pa. R.C.P. 238(b)(2).

¶ 30 The record reveals several lengthy periods of inactivity. Indeed, Appellees' damages occurred some fifteen years ago and the case is only now before us. Despite the fact that Appellant's Statement of Matters Complained of on Appeal alleges that the trial court erred in granting delay damages, the court's Opinion makes no mention of delay damages at all. Pursuant to Rule of Appellate Procedure 1925(a),

> [w]e have held that the trial court must file an opinion addressing the issues set forth in the appellants' Pa.R.A.P. 1925 statement: The Pennsylvania Rules of Appellate Procedure require a trial court, upon notice of appeal from post-trial motions or other orders, to file an opinion detailing the reasons for the order or for the rulings or matters complained of or to specify in writing the place in the record where such reasons may be found. The purpose of Rule 1925(a) is to give the appellate court a reasoned basis for the trial court's decision and to require the trial judge to consider thoroughly decisions regarding post-trial motions.... Ordinarily the

remedy for non-compliance with Pa. R.A.P. 1925(a) is a remand to the trial court with directions that an opinion be prepared and returned to the appellate court.

*Cooke v. Equitable Life Assurance Society,* 723 A.2d 723, 727 (Pa.Super.1999) (citation omitted).

¶ 31 The trial court gave no indication of whether and/or how it considered the inactive periods reflected by the docket in fashioning the award of delay damages. We decline to make a decision on whether the trial court's calculation of delay damages was erroneous when we have no idea how it characterized the dormant periods, which is crucial to the determination. Therefore, we remand with directions to the trial court to submit an opinion to this Court within thirty days explaining its calculation of delay damages relative to Rule of Civil Procedure 238(b)(2).

¶ 32 Affirmed in part and reversed in part. Remanded with instructions. Jurisdiction retained.