Marie **FEENEY**, as Administratrix of the Estate of James J. McDevitt, Sr., and Individually in Her Own Right, Appellant

v.

**DISSTON MANOR PERSONAL CARE HOME, INC.** and David A.P. Mittal and Kumkum Mittal and Aruna Mittal and Anand Mittal, Appellees

Superior Court of Pennsylvania.

Argued Dec. 2, 2003.

Filed April 13, 2004.

Reargument Denied June 15, 2004.

Thomas Finarell, Philadelphia, for appellant.

Charles W. Craven, Philadelphia, for appellees.

Before: DEL SOLE, P.J., MUSMANNO and TAMILIA, JJ.

OPINION BY DEL SOLE, P.J.

¶ 1 Appellant, as administrator of her father's estate, brought an action against the personal care home where he was residing [Disston] and its owners, managers and/or corporate officers [collectively referred to as the Mittal defendants].[1] Appellant sought relief based on claims of negligence, breach of contract and viola-

tion of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201–209. The unfair trade practices claim was dismissed on defendants' motion for summary judgment. The matter proceeded to trial on the remaining claims, but at the close of Appellant's case the defendants moved for a compulsory nonsuit. The motion was granted with the trial court finding there was no evidence to sustain any of Appellant's claims. Appellant filed a post-trial motion seeking to remove the nonsuit, which was denied and this timely appeal followed. While we affirm the trial court's grant of summary judgment on the unfair trade practices claim and the grant of the nonsuit on the contract claim, we conclude Appellant put forth sufficient evidence to permit the negligence claim to be presented to the jury for a determination. Accordingly, as to the negligence claim, we reverse and remand for a new trial.

¶ 2 An order denying a motion to remove a compulsory nonsuit will be reversed on appeal only for an abuse of discretion or error of law. *Kuriger v. Cramer,* 345 Pa.Super. 595, 498 A.2d 1331 (1985). A trial court's entry of compulsory nonsuit is proper where the plaintiff has not introduced sufficient evidence to establish the necessary elements to maintain a cause of action, and it is the duty of the trial court to make a determination prior to submission of the case to a jury. *Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649 (1996). In making this determination the plaintiff must be given the benefit of every fact and all reasonable inferences arising from the evidence and all conflicts in evidence must be resolved in plaintiff's favor. *American States Ins. Co. v. Maryland Ca-*

---

1. Unless otherwise stated the term "defendants" shall refer to both Disston and the Mittal defendants.

*sualty. Co.,* 427 Pa.Super. 170, 628 A.2d 880 (1993).

¶ 3 The trial court recounted the following facts as presented by Appellant at trial:

Mr. McDevitt had an ongoing mental illness which required him to take medication. His mental illness significantly worsened after he separated from his wife in 1991. By 1995, Mr. McDevitt had arrived at a point where he was unable to care for himself and, as a result, he was hospitalized. After numerous transfers from various personal care homes, Mr. McDevitt arrived at Disston on July 6, 1996. Although Disston was a personal care home, it did not accept residents that required a level of care normally provided by a nursing facility. Plaintiff and Mr. McDevitt met with the ... defendants to discuss Mr. McDevitt's admittance into Disston. Pursuant to Disston's admittance contract, residents were not restricted from leaving the home. As a Disston resident, Mr. McDevitt had the right to leave at any time. Mr. McDevitt received 24–hour awake supervision, which consisted only of simple oversight and did not provide one-on-one care. The Mittals, Plaintiff, and Mr. McDevitt signed the admittance contract, which Plaintiff did not read prior to signing. At that meeting, Plaintiff handed Mr. Mittal the medication prescribed for Mr. McDevitt's mental illness.

Plaintiff visited Mr. McDevitt at Disston every Saturday following his admittance. On November 28, 1998, Plaintiff's husband went to visit Mr. McDevitt alone. Her husband returned and told Plaintiff that Mr. McDevitt was not at Disston and that he was told Mr. McDevitt had gone out for the day with a friend. On December 1, 1998, an employee at Disston attempted to contact Plaintiff regarding the fact that Mr. McDevitt had not yet returned to Disston. Disston's employees were unable to contact Plaintiff at both her home and work. On December 4, a representative from Disston successfully contacted Plaintiff and informed her that Mr. McDevitt had not returned from a trip he took with a friend and taken with him a week's worth of medication. Plaintiff went to Disston herself and spoke with an employee, who informed her that Mr. McDevitt had taken no clothes or medication with him prior to his disappearance. Plaintiff later discovered Mr. McDevitt had been missing since November 24, 1998.

Plaintiff and Plaintiff's family searched the surrounding area for Mr. McDevitt. Plaintiff checked Mr. McDevitt's bank accounts and found that no money had been taken. Plaintiff's brother notified the police of Mr. McDevitt's disappearance. Despite checking with all Mr. McDevitt's friends, no one had seen him at all. Despite their search, neither the police nor Plaintiff and her family were able to locate Mr. McDevitt. On December 16, Mr. Mittal called Plaintiff and told her that he had received a call from the coroner's office about an unidentified male body which might be Mr. McDevitt. The body had been found by the police in a nearby river. The following day, Plaintiff went to the coroner's office and identified the body as that of Mr. McDevitt. Mr. McDevitt's death certificate indicated that the cause of death was drowning.

Trial Court Opinion, 7/28/03, at 2–5 (footnotes referencing citations to notes of testimony omitted.)

¶ 4 The trial court in examining these facts found that "no negligence was shown and absolutely no causal connection to any

injury was demonstrated." *Id.* at 10. It ruled that the case of *Mohler v. Jeke,* 407 Pa.Super. 478, 595 A.2d 1247 (1991) was "absolutely on point and controlling in the present matter." *Id.* at 9, 595 A.2d 1247.

¶ 5 In *Mohler* the plaintiff also brought an action alleging negligence and breach of contract against a personal care home where he resided after he ran out of the facility in an incoherent state and into the street, injuring himself in a fall. The Superior Court affirmed the trial court's grant of a nonsuit. Regarding the negligence claim, the plaintiff had argued that the personal care home should be held to a higher standard of care and liability because they failed to supervise and train the staff to care for him correctly.

¶ 6 The Superior Court noted first that the personal care home had complied with all administrative regulations; thus there was no negligence *per se.* After examining the facts of the matter, the Court further found that the defendants acted reasonably and pointed out that the plaintiff was taken to the hospital when he acted incoherent and when returned, he was put to bed. The Court noted that there was nothing to indicate that the plaintiff's behavior would be any more unusual on the evening of his accident and that the attendant on duty attempted to stop him but was unable to do so. The plaintiff's contentions that the lack of door buzzers and the failure to require notations in log books increased the risk of harm to plaintiff and constituted evidence of negligence were also dismissed. The Court found these practices would not have helped in this situation. The attendant was aware of the plaintiff's attempt to leave and tried to stop him but the plaintiff pushed his way past the attendant and out the door. The Court found that a buzzer would have only alerted them to what they already knew, and that the further train-

ing or entry of a notation in a log book would not have assisted the attendant in stopping the plaintiff. The *Mohler* Court ultimately held that the incident was not foreseeable at the time it occurred and the defendants acted reasonably, warranting the trial court's grant of a nonsuit.

¶ 7 In examining the facts of *Mohler* against the facts of this case, we cannot agree with the trial court that *Mohler* is "on point" and "controlling." In *Mohler* the staff attempted to stop the plaintiff as he ran out of the facility into the street, falling and injuring himself. Here Appellant's decedent left the facility without his daily medication or extra clothing and the facility did nothing and notified no one that he was missing for 10 days. The *Mohler* court found the plaintiff's actions and subsequent injury were unforeseen and that the personal care home acted reasonably. We cannot say the same regarding this case. We find that a jury could determine that it was foreseeable that some injury would befall an elderly resident of a home who wandered off without medication and didn't return for days. We likewise hold that these facts are sufficient for the jury to determine that the defendants' conduct, in failing to notify anyone of a resident's unexplained absence for 10 days, was unreasonable.

¶ 8 The elements of a cause of action based on negligence are a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss. *J.E.J. v. Tri–County Big Bothers/Big Sisters,* 692 A.2d 582, 584 (Pa.Super.1997). If a plaintiff is able to establish that the defendant breached some duty of care owed to the plaintiff, it must also be shown that there exists a causal connection between the defendant's conduct and the plaintiff's injury. *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1284 (1978). The causal connection re-

ferred to as proximate cause can be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. *Id.* Two or more causes may contribute to and thus be the legal or proximate cause of an injury. *Powell v. Drumheller,* 539 Pa. 484, 653 A.2d 619, 623 (1995). To determine if an intervening force is a superseding cause, "the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable." *Id.* It is for a jury to determine whether an act is so extraordinary as to constitute a superseding cause. *Id.*

¶ 9 Appellant sought to establish negligence based upon Section 323 of the Restatement (Second) of Torts. It provides:

§ 323. Negligent Performance of an Undertaking to Render Services

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323

■ ¶ 10 In *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, the Court noted the effect of Section 323(a) was to relax the degree of certainty ordinarily required of a plaintiff's evidence in order to make a case for the jury. *Poleri v. Salkind,* 453 Pa.Super. 159, 683 A.2d 649, 654–655 (1996). Once a plaintiff has introduced evidence that a defendant's negligent act or omission increased the risk of harm to a person in plaintiff's position, and that the harm was in fact sustained, it becomes a question for the jury whether that increased risk was a substantial factor in producing the harm. *Hamil* at 269. "To resolve such a claim a fact-finder must consider not only what *did* occur, but also what *might* have occurred, *i.e.,* whether the harm would have resulted from the independent source even if defendant had performed his service in a non-negligent manner." *Id.* at 269–270, 392 A.2d 1280.

■ ¶ 11 Applying the law to the facts of this case we find Appellant offered evidence that the defendant's conduct did increase the risk of harm to the decedent and the jury should have been permitted to consider whether that increased risk of harm was a substantial factor in the decedent's death. The defendants clearly undertook to render services to another for that person's protection. While defendants were admittedly not a nursing facility, but rather a personal care home, they maintained a duty to watch over the decedent and provide a certain level of care. The admission agreement provided that "the resident is not restricted in the right to leave and return to the home at reasonable times." However it also stated that the "sign out" procedure was to "inform staff on duty" and for overnight absences the resident "must inform staff on duty." Admission Agreement, dated 7/5/96, at 3 and 6. Thus, evidence of the defendants' duty to know of the whereabouts of its residents was offered by Appellant.

¶ 12 In addition, we believe Appellant offered sufficient evidence that defendants' inaction in face of the decedent's absence was unreasonable. Appellant offered evidence to show that the decedent left the personal care home without extra clothing or medication and without following sign out procedures for an overnight or extend-

ed stay outside the facility. Defendants did not speak to any family member or inform anyone of his absence and did not begin a search for him for 10 days. Defendants' failure to take action and make further inquiries as to why one its residents was missing for 10 days certainly can be found to be unreasonable. Defendants undertook some duty to supervise the decedent and at the very least to monitor his whereabouts. A jury would certainly be free to find that defendants' failure to take this most basic action for this length of time does not constitute reasonable care.

¶ 13 In *Filter v. McCabe*, 733 A.2d 1274 (Pa.Super.1999), the court found that the plaintiffs had presented sufficient facts to support a claim in negligence under § 323. There the defendant hosted a party at his home where there was drinking. Plaintiff attended the party and after everyone else left, he fell, struck his head on the concrete floor, and was rendered unconscious. The defendant revived him and placed him on a couch until the next morning when the plaintiff awoke and proceeded home. The defendant called the plaintiff's home at about 9:35 A.M. and spoke to his wife because the plaintiff was sleeping. The defendant inquired about the plaintiff's arrival home, but the defendant never told the wife about the plaintiff's fall. About an hour later the defendant again called plaintiff's wife and informed her of the fall. When plaintiff's wife went to check on him, she was unable to wake him. It was later determined that plaintiff suffered permanent brain damage. The court found that § 323 could apply to a homeowner such as the defendant. The court concluded that the claim under § 323 that the defendant was negligent in caring for the plaintiff after his fall was "for a jury to determine factually" and it was for a jury to determine whether "there is liability on the part of [the defendant]." *Id.* at 1277.

¶ 14 As with the claim in *Filter*, the jury in this case should be permitted to consider whether the defendants' care was negligent under § 323. In both instances the defendant failed to take some action which may have increased the risk of harm ultimately suffered by the plaintiff. The jury presented with these facts should consider whether the defendant's actions did increase the risk of harm to the decedent and were the proximate cause of his resulting death. Appellant in this case offered evidence that the decedent died no more than nine days before his autopsy, which occurred on December 16. Thus it is apparent that the decedent was alive for a number of days after he left the defendants' personal care home. However, because defendants failed to notice and act on the decedent's absence from the home, there was no timely search for him made. It is for a jury to determine whether his later drowning was intervening conduct which was so extraordinary as not to have been reasonably foreseeable. *Powell v. Drumheller*, 653 A.2d at 623 (finding the question of concurrent causation is normally one for a jury).

¶ 15 We therefore conclude that the trial court erred in entering a compulsory nonsuit on Appellant's negligence claim and the matter should proceed for a determination of liability by a jury. However we find no fault with the court's dismissal of Appellant's breach of contract and unfair trade practices claims.

¶ 16 While we have concluded that the defendants' inaction can constitute a breach of a legal duty toward the Appellant's decedent, we do not find that such inaction was a breach of contract. Appellant argues that the defendants' actions allowing the decedent to leave and failing to take steps to assure his safe return "represented a breach of the duty arising

out of that contractual undertaking." Appellant's Brief at 5. However Appellant is unable to point to any specific terms of the contract which was allegedly breached. Under the terms of the agreement the decedent was expected to sign out for any extended absences. He failed to do so. The contract does not dictate what action the defendants were to assume in such a situation—common experience and general rules of law govern this matter. The facts as set forth by Appellant do not constitute a breach of contract action, rather simply a negligence claim which can incorporate the contract terms as evidence of the defendants' duty.

¶ 17 Regarding the unfair trade practices claim which was dismissed earlier by the trial court on a motion for summary judgment, the defendants argue the appeal of this matter is unreviewable. They contend that Appellant's failure to include this issue in her motion for post-trial relief did not preserve the claim for further appellate review. They are mistaken. In *B.K. v. Chambersburg Hospital*, 834 A.2d 1178, 1181 (Pa.Super.2003), the Court held that it is unnecessary to include a prior order granting summary judgment in post-trial motions for purposes of issue preservation.

¶ 18 Although we find Appellant's claim preserved, we find it without merit. Appellant sets forth the following argument in support of her claim:

Plaintiff's claim was that defendants promised to provide 24 hour supervision. Viewed in the context of Mr. McDevitt's condition, necessitating daily medication for him to maintain a minimum capability for rational thought, that promise required an immediate response to his disappearance from the home. Mr. McDevitt, and [Appellant], had every right to expect that 24 hour supervision

did not mean attending to the problem by notifying the family ten days after it was known to exist. The evidence presented at trial would therefore have been plainly sufficient to satisfy the fraud and misrepresentation elements of an unfair trade practices claim.

Appellant's Brief at 15.

¶ 19 In order to state a claim under the UTPCPL, a plaintiff must allege one of the "unfair or deceptive practices" set forth in 73 P.S. § 201–2(4)(i)–(xxi); 73 P.S. § 201–3; *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027 (Pa.Super.2001). Appellant has not set forth or cited to any specific provision of the law to identify what specific practice violated its provisions. She only states that the defendants' actions satisfy the fraud and misrepresentation elements of the act.

¶ 20 The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices, and the statute is the principal means for doing so in the Commonwealth. *Pirozzi v. Penske Olds Cadillac–GMC, Inc.*, 413 Pa.Super. 308, 605 A.2d 373, 375 (1992). To prove fraud, a plaintiff must demonstrate by clear and convincing evidence: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Blumenstock v. Gibson*, 811 A.2d 1029, 1034 (Pa.Super.2002).

¶ 21 Appellant does not set forth a claim of fraud. There is nothing to suggest that these defendants fraudulently made a

promise intending to mislead either the decedent or Appellant into the contractual agreement. As Appellant points to no specific provisions of the law which were violated[2] and her general allegations do not support a claim, we find no error in the trial court's grant of summary judgment.

**2.** The complaint does provide that "Pursuant to the Unfair Trade Practice and Consumer Protection Law, and in particular Sections 201–2(4)(ii);(xiv);(v) and (xxi) plaintiff is entitled to treble damages, attorneys fees, costs and such additional relief as the Court deems just under 73 P.S. § 201–et seq." Complaint

¶ 22 Order affirmed in part, reversed in part. Case remanded. Jurisdiction relinquished.

at 57. Section 201–2 and the particular subsections referred to in the complaint only provide definitions for the terms used in the Act. The right to a private action under the Act is set forth in § 201–9.2 which is not mentioned in the complaint.