J-A04034-16

2016 PA Super 96

| JACK HILL, SR. AND CHERYL HILL, INDIVIDUALLY, AND AS CO-ADMINISTRATORS OF THE ESTATE OF JACK HILL, JR., DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| SLIPPERY ROCK UNIVERSITY; SLIPPERY ROCK UNIVERSITY MCLACHLAN STUDENT HEALTH CENTER; LAURA A. BATEMAN, CRNP; THE NATIONAL COLLEGIATE ATHLETIC ASSOCIATION "N.C.A.A.," | |
| Appellees | No. 180 WDA 2015 |

Appeal from the Order January 20, 2015
In the Court of Common Pleas of Butler County
Civil Division at No(s): AD-14-10570

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

OPINION BY SHOGAN, J.:                    **FILED MAY 03, 2016**

Jack Hill, Sr. and Cheryl Hill, individually and as co-administrators of the estate of Jack Hill, Jr. ("Mr. Hill"), deceased, (collectively "Appellants"), appeal from the order entered on January 20, 2015. The January 20, 2015 order made final a portion of the order entered on December 22, 2014, that granted the preliminary objection in the nature of a demurrer filed by the National Collegiate Athletic Association ("the NCAA") and dismissed with

prejudice Appellants' claims against the NCAA.[1]  Appellants contend that the trial court erred in granting the NCAA's preliminary objection.  More specifically, Appellants argue that the trial court erred in concluding that an increased risk of harm, as required by Section 323(a) of the Restatement (Second) of Torts, can be based only on an affirmative act.  For the reasons that follow, we reverse and remand for further proceedings.

The trial court set forth the relevant background of this matter as follows:

> [Appellants], parents and Administrators of the Estate of Jack Hill, Jr., Deceased, allege that, on September 9, 2011, Jack Hill, Jr. was participating in a late-night, high-intensity basketball practice, when he complained of feeling ill and collapsed to the floor, unresponsive. [Appellants] allege that neither the coaches nor the training staff offered Mr. Hill immediate medical care, such as CPR. [Appellants] allege that Mr. Hill was eventually transported to the Grove City Medical Center, where he was found to be in respiratory and cardiac arrest, and where he subsequently passed away. [Appellants] allege that an autopsy revealed marked red blood cell sickling in Mr. Hill's lungs and liver, and that hemoglobin electrophoresis disclosed the presence of Sickle Cell Trait ("SCT"). [Appellants] allege that [Slippery Rock University], the [Slippery Rock University] Health Center, and Nurse Bateman were negligent for not testing for or requiring testing on Mr. Hill or other athletes for SCT prior to

---

[1] The trial court specifically stated that portion of the order was deemed final pursuant to Pa.R.A.P. 341(c) and that "an immediate appeal will facilitate resolution of this entire case."  Order, 1/20/15, at unnumbered 2. The December 22, 2014 order also granted in part and denied in part the preliminary objections filed by Slippery Rock University, Slippery Rock University McLachlan Student Health Center, and Laura A. Bateman, [Certified Registered Nurse Practitioner ("CRNP")] (collectively "the Slippery Rock Defendants"). The Slippery Rock Defendants are not a part of this appeal.

allowing him/them to participate in athletic activities, and for failing to educate Mr. Hill and other athletes about the dangers of SCT. [Appellants] allege said parties were negligent for failing to respond to Mr. Hill's collapse by providing immediate medical care, and for failing to adequately train and supervise its staff on proper CPR administration, AED use, and other emergency first aid procedures. [Appellants] also allege that the N.C.A.A. was negligent for failing to require Division II schools, such as [Slippery Rock University], to screen its athletes for SCT prior to their participation in athletic activities.

[Appellants] filed their initial Complaint on September 6, 2013, then they filed three subsequent Amended Complaints, ending with their Fourth Amended Complaint ("Complaint"), filed on March 17, 2014. [Appellants] assert, against each Defendant, one count each for negligence, wrongful death, and survival action. On April 25, 2014, Judge Folino, of the Allegheny County Court of Common Pleas, transferred the case to Butler County.

On September 5, 2014, the N.C.A.A. filed its Preliminary Objections to [Appellants'] Fourth Amended Complaint and its Brief in Support. In said objections, the N.C.A.A. demurs, and argues that [Appellants] fail to allege that the Defendant[s] owed Mr. Hill any legally recognized duty. The N.C.A.A. further argues that the Complaint lacks specificity as regards the source of any duty that it allegedly owed to him. Finally, the N.C.A.A. argues that the "no-duty" rule precludes any basis for liability between the N.C.A.A. and the [Appellants].

On September 9, 2014, the Slippery Rock Defendants filed their Preliminary Objections to [Appellants'] Fourth Amended Complaint and their Brief in Support, incorporating by reference their Preliminary Objections to [Appellants'] original Complaint. Said Defendants argue that [Appellants'] claims for corporate negligence and negligent supervision, hiring, and training, against the University and the Health Center, are barred by sovereign immunity. The Slippery Rock Defendants further argue that [Appellants'] allegations of negligence, based upon said Defendants' failure to test, to require testing, or to educate students about the risks of SCT, are based upon corporate policies and are thus barred by sovereign immunity. Said Defendants argue that the allegations against Nurse Bateman, for negligent hiring, training, and supervision, and for failing to require SCT testing, are allegations of corporate negligence, and

are barred. Finally, said Defendants argue that [Appellants'] request for loss of parental consortium is not recognized in Pennsylvania, and that funeral and estate administration expenses are not recoverable against a state agency.

On October 31, 2014, [Appellants] filed their Responses and Briefs in Support to each Defendants' Preliminary Objections. With regard to the Slippery Rock Defendants, [Appellants] argue that the University's negligence is based upon the doctrine of respondeat superior, and is not based upon a corporate negligence theory. With regard to the N.C.A.A.'s preliminary objections, [Appellants] argue that their Fourth Amended Complaint contains dozens of allegations regarding N.C.A.A.'s alleged duty to Mr. Hill, which, when taken together, sufficiently plead an N.C.A.A. duty owed to Jack Hill, Jr. [Appellants] further argue that the "no-duty" rule does not apply to this case, as the risk at issue, sickle cell complications, is not an inherent risk of physical activity. On November 6, 2014, the N.C.A.A. filed its Reply Memorandum of Law in Support of its Preliminary Objections. Oral arguments were held on November 7, 2014.

Trial Court Opinion, 12/22/14, at 2-4.

As noted above, the trial court granted in part and denied in part the preliminary objections filed by the Slippery Rock Defendants, and it granted the preliminary objection in the nature of a demurrer filed by the NCAA and dismissed the claims against the NCAA with prejudice. In dismissing the claims against the NCAA, the trial court initially concluded that Appellants' factual allegations did aver, with sufficient specificity, the assumption of a legal duty by the NCAA to, and for the benefit of, Mr. Hill. However, the trial court ultimately found that Appellants failed to sufficiently plead liability on the part of the NCAA. This appeal followed. Both the trial court and Appellants have complied with Pa.R.A.P. 1925.

- 4 -

The issue on appeal is whether, under the circumstances presented in the case at bar, Appellants possess a cognizable negligence claim against the NCAA arising from Mr. Hill's death. Appellants' Brief at 4. Specifically, Appellants aver that when a party owes a duty, an allegation that the party failed to act in conformance with that duty can increase the risk of harm and satisfy the elements of a claim of negligence pursuant to Section 323(a) of the Restatement (Second) of Torts. Appellants' Brief at 33. After review, we agree with Appellants' position that, at this stage of the proceedings, the trial court erred in concluding that no recovery was possible.

Appeals from orders granting a preliminary objection in the nature of a demurrer are reviewed under the following standard:

> A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.
>
> In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 208-209 (Pa. Super. 2012) (internal citations and quotation marks omitted).

In their fourth amended complaint, Appellants alleged the NCAA was negligent. Fourth Amended Complaint, 3/17/14, at 20, Count III.

> To establish a viable cause of action in negligence the pleader must aver in his complaint "a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Feeney v. Disston Manor Personal Care Home, Inc.*, 849 A.2d 590, 594 (Pa. Super. 2004). Appellant sought to establish negligence based upon section 323 of the Restatement (Second) of Torts, which provides as follows:

>> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

>>> (a) His failure to exercise such care increases the risk of such harm, or

>>> (b) The harm is suffered because of the other's reliance upon the undertaking.

> RESTATEMENT (SECOND) OF TORTS § 323 (1965).[3]

> _____
> [3] Section 323 has been adopted as the law in Pennsylvania. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 746 (1984); *Cooper v. Frankford Health Care System, Inc.*, 960 A.2d 134, 145–45 (Pa.

Super. 2008); *Filter v. McCabe*, 733 A.2d 1274 (Pa.
Super. 1999).

*Unglo v. Zubik*, 29 A.3d 810, 813 (Pa. Super. 2011).

In their Fourth Amended Complaint, Appellants pled: "At all times material hereto, the N.C.A.A. had an irrevocable duty to [Mr. Hill] to establish and enforce protocols relating to student athlete safety." Fourth Amended Complaint, 3/17/14, at 8, ¶ 64. Additionally, Appellants alleged that the NCAA regulated, promulgated, and enforced protocols for the safety of student athletes, and NCAA affiliated schools were mandated to comply with NCAA medical condition testing. *Id*. at ¶¶ 66-71. If a school failed to abide by the NCAA mandates for student athlete safety, that school would face sanctions. *Id*. at ¶ 73. At all times relevant hereto, Slippery Rock University was an NCAA member school. *Id*. at ¶ 78. Beginning in 2010, the NCAA required SCT testing for Division I athletes, Fourth Amended Complaint, 3/17/14, at 8, ¶ 90, but such testing was not implemented in Division II schools until 2012 and Division III schools until 2013. *Id*. at ¶ 92.

Initially, the trial court concluded that Appellants sufficiently alleged that the NCAA assumed a duty, and pleaded facts that, if true, would support a finding that the NCAA acted for the benefit of student athletes and that Mr. Hill, at the time of his death, was within the class of individuals the NCAA was to protect. Trial Court Opinion, 12/22/14, at 20-22. On that basis, the trial court denied the NCAA's preliminary objection wherein the

NCAA averred that Appellants failed to plead a duty. *Id*. at 22. However, the trial court then determined that Appellants failed to plead facts that would allow for a finding that the NCAA increased Mr. Hill's risk of harm, as required under Section 323(a) of the Restatement.[2] As support for its position, the trial court cited ***Wissel v. Ohio High School Athletic Association***, 605 N.E. 2d 458 (Ohio Ct. App. 1992). The trial court provided the following rationale:

> As noted by the court in ***Wissel***, ***supra***, § 323(a), increased risk of harm, applies
>
>> only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially. Put another way, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance. As we have noted when interpreting § 324A(a), a companion provision to § 323(a), to prevail under a theory of increased risk of harm a plaintiff must 'identify sins of commission rather than omission.'
>
> ***Id***. at 465 (citing ***Patentas v. United States***, 687 F.2d 707, 716 (3d Cir.1982) [quoting ***Turbe v. Government of Virgin Islands***, 938 F.2d 427, 428 (C.A.3 (Virgin Islands),1991)]. [Appellants] argue that, because the N.C.A.A. knew of the dangers of SCT and yet failed to timely implement mandatory SCT testing for Division II schools, Mr. Hill was not tested for or diagnosed with SCT; therefore, his exertion levels were not properly monitored during his basketball practice, and SCT-related emergency resuscitation procedures were not employed

_____

[2] The trial court also decided that there was insufficient pleading of reliance for liability pursuant to Section 323(b) of the Restatement (Second) of Torts. Appellants do not challenge that conclusion on appeal.

- 8 -

by emergency personnel. [Appellants] argue that these actions increased Mr. Hill's risk of harm relative to the risk that he would have faced had he been diagnosed with SCT and properly monitored during practice. However, [Appellants] interpretation of the risk of harm standard for liability is not provided for in the case law. As explained in **Wissel**, the proper test for increased risk of harm is whether the N.C.A.A., by undertaking to provide medical condition testing and sports participation protocols, put Mr. Hill in a worse situation than if the N.C.A.A. had never undertaken to perform said services. In this case, [Appellants] do not plead facts that would support such an allegation; in other words, contrary to the requirements set forth in **Wissel**, [Appellants] allege sins of omission, rather than commission. Therefore, [Appellants] do not sufficiently allege that the N.C.A.A.'s actions increased Mr. Hill's risk of harm, to establish a legal duty under § 323.

Trial Court Opinion, 12/22/14, at 22-23.

First, we point out that neither **Wissel** nor the cases it cites, **Turbe** and **Patentas**, is binding authority in this Court.[3] Second, we cannot agree with the trial court's analysis.

Here, Appellants alleged the NCAA owed a duty of care to Mr. Hill because he was a student at Slippery Rock University. Fourth Amended Complaint, 3/17/14, at 4, ¶ 13. Mr. Hill completed a pre-participation

---

[3] **See NASDAQ OMX PHLX, Inc. v. PennMont Securities**, 52 A.3d 296, 303 (Pa. Super. 2012) (decisions of the federal courts of appeals are not controlling authority); **Gongloff Contracting, L.L.C. v. L. Robert Kimball & Associates, Architects and Engineers, Inc.**, 119 A.3d 1070, 1078 (Pa. Super. 2015) (stating that pronouncements of the lower federal courts have only persuasive authority and are not controlling); **see also Umbelina v. Adams**, 34 A.3d 151, 160 (Pa. Super. 2011) (stating that the decisions of other states are not binding authority for this Court, although they may be persuasive).

athletic physical. *Id*. at ¶ 20. The medical questionnaire asked if Mr. Hill had Sickle Cell Anemia ("SCA") or SCT. *Id*. at ¶ 23. Mr. Hill was unaware that he had SCT. *Id*. at ¶¶ 24-25. Appellants claimed that despite inquiring as to whether Mr. Hill had SCA or SCT, at no point did anyone require or request a blood test to check for these diseases. *Id*. at ¶ 26. Appellants asserted that despite the pre-participation physical questionnaire, no one informed Mr. Hill of the dangers of SCA or SCT. *Id*. at ¶ 27.

Furthermore, Appellants averred that the NCAA regulates athletic participation rules for its student athletes. Fourth Amended Complaint, 3/17/14, at 4, ¶ 69. Appellants specifically stated that a 2007 NCAA Consensus Statement recommended testing for SCT in all student athletes. *Id*. at ¶ 87. Appellants also pled that the NCAA mandated SCT testing for athletes at Division I schools in August of 2010, *id*. at ¶ 90, but it failed to require SCT testing for Division II schools such as Slippery Rock until August of 2012. *Id*. at ¶¶ 91-92. The SCT testing at Division II schools, therefore, was not implemented until after Mr. Hill's death.

Thus, relevant to our standard of review, the complaint asserted that the Slippery Rock Defendants and the NCAA initiated medical and physical evaluations, but provided no SCT testing and permitted Mr. Hill to participate in the workout that led to his demise. The incomplete medical clearance may have led Mr. Hill to believe that he was physically fit for basketball. Therefore, Appellants sufficiently alleged that the initiation of medical and

physical evaluations, which did not include SCT testing for Division II schools, increased Mr. Hill's risk of harm.

We conclude that Appellants' Fourth Amended Complaint succinctly averred that the then-existing NCAA Division II participation protocols allowed a young man with SCT to participate in a high-intensity workout. Had the NCAA's protocols tested for SCT at Division II schools, Mr. Hill may not have suffered the event that caused his death. Thus, Appellants claimed that the inadequate pre-participation physical, which allowed Mr. Hill to play basketball, increased his risk of harm. Appellants alleged that this increased risk of harm could have been prevented if the NCAA discharged its duty and required SCT testing.

Herein, the trial court's reliance on *Wissel* for the proposition that an increased risk of harm can be established through only "sins of commission" was incorrect. In Pennsylvania, an increased risk of harm can occur through a failure to act, or a "sin of omission." Indeed, in addressing increased risk of harm under Section 323 of the Restatement, the Pennsylvania Supreme Court stated as follows:

> [O]nce a plaintiff has demonstrated that defendant's **acts or omissions**, in a situation to which Section 323(a) applies, have increased the risk of harm to another, such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.

*Hamil v. Bashline*, 392 A.2d 1280, 1288 (Pa. 1978) (footnote omitted) (emphasis added). Moreover, in *Hamil*, the Court noted the effect of Section 323(a) was to relax the degree of certainty ordinarily required of a plaintiff's evidence in order to make a case for the jury. *Id.*; *see also Feeney*, 849 A.2d at 595 (applying the standard announced in *Hamil* to a motion to remove a compulsory nonsuit).[4]

In this case, Appellants pled that the NCAA had a duty to protect its student athletes from SCT, and it is evident that Appellants also pled that the NCAA, in failing to discharge that duty, increased the risk of harm to Mr. Hill. Fourth Amended Complaint, 3/17/14, at ¶¶ 114-116. Ultimately, the factfinder could reasonably conclude that the NCAA's decision to test for SCT at Division I schools as part of its protocols, **while forgoing such testing at Division II schools**, was an error of omission and a failure in its duty, thereby increasing the risk of harm to Mr. Hill.

After review of the pleadings, at this juncture of the proceedings and pursuant to our standard of review, we cannot conclude that there is a certainty that no recovery is possible. *Weiley*, 51 A.3d at 208-209. Simply stated, Appellants' allegations are sufficient to survive preliminary objections. Accordingly, we conclude that the trial court erred in its

_____

[4] While *Feeney* addressed Section 323 in connection with a motion to remove a compulsory nonsuit, its discussion of Section 323 and its application to acts of commission and omission is particularly apt.

application of the law, and we reverse that part of the order granting the NCAA's preliminary objection in the nature of a demurrer.

Order reversed in part. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

P.J.E. Ford Elliott joins the Opinion.

P.J.E. Bender Notes Dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/3/2016