J-A07019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF JEFF S. HINE BY AND THROUGH HIS EXECUTRIX, JOLIE HINE AND JOLIE HINE, INDIVIDUALLY | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | No. 1039 MDA 2017 |
| PENNSY SUPPLY, INC. AND MICHELLE D. DULAY | : : | |

Appeal from the Order Entered June 2, 2017
In the Court of Common Pleas of Luzerne County Civil Division at
No(s): 201406930

BEFORE:   PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                **FILED SEPTEMBER 07, 2018**

Appellants, the Estate of Jeff S. Hine, by and through his executrix, Jolie Hine, and Jolie Hine, individually, appeal from the order entered on June 2, 2017, which granted the motion for summary judgment filed by Pennsy Supply, Inc. (hereinafter "Pennsy").  We vacate and remand.

On June 5, 2014, Jeff S. Hine[1] (hereinafter "Mr. Hine") and Jolie Hine (hereinafter "Ms. Hine") filed a complaint against Pennsy and Michelle D. Dulay (hereinafter "Defendant Dulay").  Within the complaint, the Hines averred that, on June 7, 2012, Mr. Hine and Defendant Dulay were involved in an automobile accident.  Appellants' Complaint, 6/5/14, at ¶ 10.  Specifically, the

_____

[1] Mr. Hine died on September 19, 2015.

_____

*   Former Justice specially assigned to the Superior Court.

complaint declared, Defendant Dulay drove her vehicle through the intersection of Parkview Circle and North Empire Court in Wilkes-Barre, Pennsylvania, and crashed into Mr. Hine's car. *Id.* at ¶¶ 8-10.

The Hines alleged that Defendant Dulay was negligent because she "proceeded through the intersection without yielding the right of way[,] causing her and [Mr. Hine] to collide." *Id.* at ¶ 10. Further, the Hines claimed that Pennsy was negligent because Pennsy was doing sidewalk construction at the intersection – and Pennsy removed the stop sign that was present at the intersection and failed to re-post the missing stop sign while doing the construction. *Id.* at ¶¶ 10 and 14.

Pennsy answered the complaint and denied that it was liable for the Hines' injuries. Further, Pennsy filed a cross-claim against Defendant Dulay, which declared that, "[i]n the event that [the Hines] are successful in proving liability against Pennsy, Pennsy asserts that [Defendant] Dulay is solely liable to [the Hines], liable over to Pennsy and/or jointly and severally liable with Pennsy to [the Hines] for any injuries/damages proven by [the Hines]." Pennsy's Answer and Cross-Claim, 7/18/14, at ¶¶ 43-44.

On August 26, 2014, the Hines and Defendant Dulay filed a stipulation, declaring that the Hines and Defendant Dulay had "reached an agreement to settle for the applicable policy limits on behalf of [Defendant] Dulay." Stipulation, 8/26/14, at ¶ 2. The stipulation further declared that the Hines withdrew all of their claims against Defendant Dulay and that Defendant

Dulay's "exposure to [the Hines] for injuries stemming from this accident[] has been eliminated by virtue of the settlement." *Id.* at ¶ 4.

Pennsy filed its summary judgment motion on March 30, 2017. Within the motion, Pennsy declared that the accident occurred in the following manner:

> [Mr. Hine] was traveling west-bound on North Empire Court when [Defendant] Dulay[,] traveling northbound on Parkview Circle[,] collided with [Mr. Hine's] vehicle as [Defendant] Dulay exited Parkview Circle while attempting to make a left onto North [Empire Court].

Pennsy's Motion for Summary Judgment, 3/30/17, at ¶ 2.

Pennsy noted that "Section 3321 of the Pennsylvania Vehicle Code . . . required [Defendant] Dulay to yield at the intersection of Parkview Circle and North Empire Court and yield the right-of-way to Mr. Hine;" moreover, Pennsy declared, since Defendant Dulay was making a left turn at the intersection, Section 3322 of the Vehicle Code also required Defendant Dulay to yield the right-of-way to Mr. Hine. *Id.* at ¶ 15.

As Pennsy claimed, at the time of the accident, it was performing road construction "at or near the intersection" where the accident occurred. *Id.* at ¶ 12. In particular, Pennsy was "performing road construction on Coal Street in the City [of Wilkes-Barre] as the primary contractor for the 'Coal Street Project' [(hereinafter "the Project"),] which was controlled by the Pennsylvania Department of Transportation" (hereinafter "PennDOT"). *Id.* at ¶ 4. Pennsy attached the relevant construction contract to its summary judgment motion; the contract does not contain any clause requiring Pennsy

to either remove or erect a stop sign at the intersection. *See id.* at Exhibit "B" (ECMS Highway Construction Contract 9223, pp. 1-164).

Pennsy claimed that it was entitled to summary judgment because "the record is devoid of any evidence that Pennsy removed the stop sign existing at the intersection prior to the accident." *Id.* at ¶ 12. Further, Pennsy claimed, it did not have a duty to erect or maintain a stop sign at the intersection. *Id.* at ¶ 13. Finally, Pennsy declared that the "record clearly demonstrates that [Defendant] Dulay failed to stop at the intersection, despite the legal obligation to do so, with or without a stop sign, which was the ultimate cause of the accident." *Id.* at ¶ 14.

Pennsy also attached deposition transcripts to its summary judgment motion. Pennsy claimed that the transcripts demonstrated that there was no genuine issue of material fact in this case. *See id.* at ¶ 15; *but see Penn Ctr. House, Inc. v. Hoffman*, 553 A.2d 900, 903 (Pa. 1989) ("[t]estimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury") (internal quotations and citations omitted); *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) ("[w]hen considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party").

Appellants responded to Pennsy's summary judgment motion and admitted that the accident occurred in the way Pennsy described. Appellants'

Response, 4/28/17, at ¶ 2. Appellants claimed, however, that the record evidence indicated that, historically, there was a stop sign present at the intersection of Parkview Circle and North Empire Court and that the stop sign "had recently been removed due to the sidewalk construction." *Id.* at ¶ 12(e). According to Appellants, the evidence of record demonstrated that Pennsy, as the prime contractor on the Project, either removed or was responsible for the removal of the stop sign. *Id.* at ¶ 12(b) and (c). Therefore, Appellants claimed, Pennsy's motion must be denied because there exists a genuine issue of material fact as to whether Pennsy was negligent for either removing or allowing the removal of the stop sign at the intersection.

On June 5, 2017, the trial court granted Pennsy's motion for summary judgment because, the trial court held, "the record is devoid of any evidence that Pennsy removed the stop sign that existed at the intersection prior to the accident." Trial Court Opinion, 6/5/17, at 2. Appellants filed a timely notice of appeal.[2] Appellants number two issues on appeal:

---

[2] Appellants settled their case against Defendant Dulay and the parties filed a stipulation declaring that Appellants withdrew their claims against Defendant Dulay. Stipulation, 8/26/14, at ¶ 4. We note that the trial court did not expressly dismiss Pennsy's cross-claim against Defendant Dulay. Nevertheless, Pennsy's cross-claim against Defendant Dulay was for indemnification and contribution and, by its terms, the cross-claim was only viable "[i]n the event that [Appellants] are successful in proving liability against Pennsy." Pennsy's Answer and Cross-Claim, 7/18/14, at ¶¶ 43-44. When the trial court granted Pennsy's motion for summary judgment, it dismissed Appellants' claims against Pennsy and made it legally impossible for Appellants to be "successful in proving liability against Pennsy." *See id.* Therefore, the grant of summary judgment to Pennsy implicitly disposed of

- 5 -

[1.] Whether the trial court committed an error of law and/or abused its discretion when granting Pennsy's motion for summary judgment based upon its finding that Pennsy owed no duty of care to [Appellants] under the instant circumstances[?]

[2.] Whether the trial court committed an error of law and/or abused its discretion when granting Pennsy's motion for summary judgment based upon its finding that Pennsy did not breach a duty of care to [Appellants] under the instant circumstances[?]

Appellants' Brief at 10.

As this Court has stated:

Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

***Englert v. Fazio Mech. Serv.'s, Inc.***, 932 A.2d 122, 124 (Pa. Super. 2007)

(internal citations omitted); ***see also Summers***, 997 A.2d at 1159 ("an

appellate court may reverse a grant of summary judgment if there has been

Pennsy's cross-claim against Defendant Dulay, thus rendering the summary judgment order the final order in the case. ***See*** Pa.R.A.P. 341(a)(1) ("[a] final order is any order that . . . disposes of all claims and of all parties").

an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals").

On appeal, Appellants claim that the trial court erred when it granted Pennsy's motion for summary judgment. According to Appellants, there is a genuine issue of material fact that Pennsy was negligent when Pennsy removed and then failed to replace the stop sign at the intersection of North Empire Court and Parkview Circle. Appellant's Brief at 39-73. We agree with Appellants.

Viewed in the light most favorable to Appellants, the facts are as follows.

At the time of the accident, Pennsy was the prime contractor for the Project. As the prime contractor, Pennsy "control[led] the subcontractors" and was "responsible for all the work" on the Project. N.T. Deposition of David Kuniega, Sr., 1/21/16, at 35-38. Part of the Project involved installing an ADA[3]-compliant ramp on the sidewalk that ran along Parkview Circle, at the intersection of Parkview Circle and North Empire Court. N.T. Deposition of Stephen J. Valenti, 10/11/16, at 14. Pennsy installed the ADA-compliant ramp prior to the accident; however, at the time of the accident, the area was still under construction. N.T. Deposition of Thomas Harding, 9/18/15, at 19-20.

---

[3] ADA is the acronym for the Americans with Disabilities Act. 42 U.S.C. §§ 12101, *et seq.*

Mr. Hine testified that, "for the last 17 . . . [or] 20 years" prior to the accident, there had been a stop sign at the corner of Parkview Circle, which required drivers on Parkview Circle to stop before crossing through, or onto, the perpendicular road of North Empire Court. N.T. Deposition of Jeff S. Hine, 1/26/15, at 20. The stop sign had been "in [the] area [of] . . . where the [new] ramp was." N.T. Deposition of David Kuniega, Sr., 1/21/16, at 94-95.

In the early-morning hours of June 7, 2012:

> [Mr. Hine] was traveling west-bound on North Empire Court when [Defendant] Dulay[,] traveling northbound on Parkview Circle[,] collided with [Mr. Hine's] vehicle as [Defendant] Dulay exited Parkview Circle while attempting to make a left onto North [Empire Court].

Pennsy's Motion for Summary Judgment, 3/30/17, at ¶ 2.

Wilkes-Barre City Police Sergeant Thomas Harding responded to the accident. As Sergeant Harding wrote in the Commonwealth of Pennsylvania Police Crash Reporting Form, the accident occurred because:

> This intersection is normally controlled by a stop sign for vehicles traveling on Parkview Circle[;] however, due to recent sidewalk construction, the stop sign was removed and was not re-posted at the time of crash. [Defendant Dulay] proceeded into the intersection without yielding right of way.

Commonwealth of Pennsylvania Police Crash Reporting Form, approved 6/8/12, at 6 (some internal capitalization omitted).

As Sergeant Harding testified, he did not "have any personal knowledge of who removed that stop sign." N.T. Deposition of Sergeant Thomas Harding, 9/18/15, at 14-15. However, Sergeant Harding testified, he believed "that

because of the construction the sign was removed." *Id.* at 26. Sergeant Harding testified that he came to this conclusion because: the stop sign was present when Pennsy began its construction; "the first time that [he] observed the absence of that stop sign" was on the morning of the accident (and, at the time, he patrolled the intersection "at least twice a week"); the stop sign existed in the area where the new ADA-compliant ramp was installed; while the ramp was installed at the time of the accident, the construction was ongoing in the area; and, there was "no damage to the concrete" where the sign should have been. *Id.* at 38-40.

Attilio "Butch" Fratti, the Director of Operations for the City of Wilkes-Barre, testified that he "would not dispute" Sergeant Harding's statement that "due to recent sidewalk construction, the stop sign was removed and not yet reposted at the time of the crash." N.T. Deposition of Attilio "Butch" Fratti, 1/20/16, at 24-25. Further, Mr. Fratti looked at a construction "punch list" that PennDOT created approximately three months after the accident. The punch list was directed towards Pennsy and declared: "Stop Signs: Empire Ct. (no stop signs at 4 way intersection). COMPLETED." *See* Punch List, from 9/12/12 through 12/14/12, at 3; *see also* N.T. Deposition of David Kuniega, Sr., 1/21/16, at 107-114; N.T. Deposition of Stephen J. Valenti, 10/11/16, at 18 (testified that the punch list item regarding the stop sign was created on September 12, 2012 and completed on September 24, 2012). Mr. Fratti interpreted the punch list entry to mean the following:

> So, when we see this, it was told to me, as I read it on the punch list, **that this stop sign happened to be removed by the contractor to develop and build a better ramp and at some point it was not put back up**.

N.T. Deposition of Attilio "Butch" Fratti, 1/20/16, at 13 (emphasis added).

Mr. Fratti also testified that, if "any entity requires or requests a removal of a stop sign, you would have to go before the traffic committee in the City of Wilkes-Barre." *Id.* at 14. However, Mr. Fratti testified, no entity or individual ever requested the traffic committee to remove the stop sign at the intersection of Parkview Center and North Empire Court. *Id.* at 15.

Mr. Fratti testified that it was not "proper for a road construction company to take down a traffic control device and leave that intersection uncontrolled." *Id.* at 27. As Mr. Fratti testified: "[i]t's just – stop signs, in particular, are very – it is dangerous to remove a traffic control item without putting something back in its place." *Id.* Pennsy employees David Tavaris and David Kuniega, Sr. agreed that a contractor is not permitted to remove a sign without proper authorization. David Tavaris testified that, if the contractor were to do so, it would be "unsafe;" David Kuniega, Sr. testified that, if the contractor were to take down a stop sign and leave for the day, the action would be "reckless." N.T. Deposition of David Tavaris, 1/21/16, at 30; N.T. Deposition of David Kuniega, Sr., 1/21/16, at 32-33.

Viewed in the light most favorable to Appellants, this evidence creates a genuine issue of material fact as to whether Pennsy was negligent in improperly removing – and then failing to replace – the stop sign at the

- 10 -

intersection of Parkview Center and North Empire Court. To be sure, Pennsy was the prime contractor on the Project and was "responsible for all the work" on the Project, including the work on the ADA-compliant sidewalk ramp. Moreover, both Sergeant Harding and Mr. Fratti expressly testified that "due to recent sidewalk construction, the stop sign was removed and not yet reposted at the time of the crash." Commonwealth of Pennsylvania Police Crash Reporting Form, approved 6/8/12, at 6; N.T. Deposition of Sergeant Thomas Harding, 9/18/15, at 26; N.T. Deposition of Attilio "Butch" Fratti, 1/20/16, at 24-25. This evidence alone is sufficient to defeat Pennsy's summary judgment motion, given the evidence also demonstrates that Pennsy did not have permission to remove the stop sign at the intersection and that removing a stop sign to create an uncontrolled intersection is unreasonably dangerous. N.T. Deposition of Attilio "Butch" Fratti, 1/20/16, at 13-15; N.T. Deposition of David Tavaris, 1/21/16, at 30; N.T. Deposition of David Kuniega, Sr., 1/21/16, at 32-33.

Therefore, we conclude that the trial court erred when it held that "the record is devoid of any evidence that Pennsy removed the stop sign that existed at the intersection prior to the accident." **See** Trial Court Opinion, 6/5/17, at 2.

We recognize that this Court may affirm a trial court's order if it is correct on any ground. **See E.J. McAleer & Co. v. Iceland Prods., Inc.**, 381 A.2d 441, 443 n.4 (Pa. 1977). And, here, Pennsy claims that "regardless of whether a stop sign was removed, [Defendant] Dulay failed to stop at the

intersection which ultimately caused the accident and, therefore, . . . it cannot be said that Pennsy's action was the proximate cause of the accident." Pennsy's Brief at 22 and 26. Pennsy's claim fails.

Regarding proximate cause, conduct is a proximate cause of the plaintiff's harm where it "was a substantial factor in bringing about the harm inflicted upon a plaintiff." *Jones v. Montefiore Hosp.*, 431 A.2d 920, 923 (Pa. 1981). As the Pennsylvania Supreme Court explained:

> At its root, the concept of legal cause . . . is an articulation of policy related to social and economic considerations. Dean Prosser has described proximate or legal causation as follows:
>
>> Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether the defendant should be legally responsible for what he has caused. Unlike the fact of causation, with which it is often hopelessly confused, this is essentially a problem of law. It is sometimes said to be a question of whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.
>
> Prosser, *Law of Torts* § 42 (4th ed.). . . . [The Pennsylvania Supreme] Court, in accord with Prosser, has stated: "the concept [of proximate cause], like that of negligence itself, was designed not only to permit recovery for a wrong but to place such limits upon liability as are deemed socially or economically desirable from time to time." *Grainy v. Campbell*, 425 A.2d 379, 382 (Pa. 1981). . . .
>
> As a general rule, however, in the absence of policy considerations which would limit liability, if an actor's

negligence is the legal cause of damages sustained by another, the actor is liable for those damages. Under the analysis of "legal cause" set forth in the Restatement of Torts, Second and adopted by [the Pennsylvania Supreme] Court . . . , the question is whether the defendant's conduct was a "substantial factor" in producing the injury. Restatement (Second) of Torts § 431.

As [the Pennsylvania Supreme] Court observed in **Ford v. Jeffries**, [379 A.2d 111 (Pa. 1977),] ordinarily the determination of whether the defendant's conduct was a substantial cause of the injuries complained of should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant has been a substantial factor in causing the harm. **See also** Restatement (Second) of Torts § 434. If issues are raised on which a jury may not reasonably differ, it is proper for the trial court to decide them. If, on the other hand, a jury may reasonably differ on whether the defendant's conduct was a substantial factor in causing the injury, generally, the case must go to the jury on those issues.

**Vattimo v. Lower Bucks Hosp., Inc.**, 465 A.2d 1231, 1233-1234 (Pa. 1983) (plurality) (emphasis omitted) (some internal citations omitted).

Further, "[t]wo or more causes may contribute to and thus be the legal or proximate cause of an injury." **Feeny v. Disston Manor Personal Care Home, Inc.**, 849 A.2d 590, 595 (Pa. Super. 2004).

As Pennsy and the trial court noted, it is true that – regardless of whether a stop sign existed at the intersection – Defendant Dulay had a legal obligation to yield the right-of-way to Mr. Hine. **See** 75 Pa.C.S.A. § 3221(a) ("[w]hen two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right"); 75 Pa.C.S.A. § 3222 ("[t]he driver of a vehicle intending to turn left within an intersection or into

- 13 -

an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard").

However, viewed in the light most favorable to Appellants, the record evidence demonstrates that Defendant Dulay was not aware of her legal obligation to yield the right-of-way to Mr. Hine. Erie Insurance Claim #010181057413 Recorded Interview, 6/7/12, at 8 (Defendant Dulay told the claims adjuster "[i]t wasn't my fault. There was no stop sign"); N.T. Deposition of Defendant Dulay, 3/25/15, at 14, 21, 27, 29, and 30 (Defendant Dulay testified that: "the accident was not [her] fault because there was no stop sign;" at the scene of the accident, she asked Sergeant Harding "I was supposed to stop at the intersection?"; "with regard to the intersection, as [she] approached the intersection, there was nothing telling [her] to slow down or stop;" and, "[i]n this situation, as [she] was entering the intersection, [she] looked and [she] believe[d she] had a right-of-way"); **see also** N.T. Deposition of Defendant Dulay, 3/25/15, at 30 (when asked "[d]o you know whether or not in the Commonwealth of Pennsylvania there is a requirement – I am not talking about stop signs – a requirement as a rule of the road . . . to stop at intersections?," Defendant Dulay answered: "I do now").

Moreover, Defendant Dulay testified that she was aware of the "rules and regulations at a stop sign . . . [to] stop" and she testified that "[i]f there was a stop sign there, [she] would [] have stopped." N.T. Deposition of Defendant Dulay, 3/25/15, at 25-26 (some internal capitalization omitted).

Viewed in the light most favorable to Appellants, this evidence demonstrates that there is a genuine issue of material fact as to whether the removal of the stop sign was a substantial factor in bringing about the harm to Appellants. To be sure, the stop sign at the intersection of Parkview Circle and North Empire Court appears to exist to ensure that drivers, such as Defendant Dulay, who might not know all of the rules of the road and are unaware of their obligation to stop at the intersection, actually stop and do not cause an accident. Thus, a jury could reasonably differ as to whether Pennsy's conduct was a substantial factor in causing Appellant's' damages and the trial court erred in taking this case from the fact-finder. **See Vattimo**, 465 A.2d at 1233-1234 (internal quotations and citations omitted).

We thus conclude that the trial court erred when it granted Pennsy's motion for summary judgment.[4]

Order vacated. Case remanded. Jurisdiction relinquished.

_____

[4] Pennsy claims that we should affirm the trial court's order because Appellants "have not identified an expert or provided an expert report related to Pennsy's duties with regard to the stop sign or [Defendant] Dulay's duties at the intersection." Pennsy's Brief at 28. We do not believe that expert testimony is necessary to establish that the unauthorized removal of a stop sign at an intersection can create an unreasonably dangerous and unsafe condition. **See Commonwealth v. Dunkle**, 602 A.2d 830, 836 (Pa. 1992) ("expert testimony is admitted only when the subject matter is beyond the knowledge or experience of the average layman. When the issue is one of common knowledge, expert testimony is inadmissible"). At any rate, Pennsy's employees admitted that a contractor is not permitted to remove a stop sign without proper authorization and that doing so is both "unsafe" and "reckless." N.T. Deposition of David Tavaris, 1/21/16, at 30; N.T. Deposition of David Kuniega, Sr., 1/21/16, at 32-33.

Judge Panella joins.

President Judge Emeritus Stevens files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/07/2018